WHINERY *v.* HAMMOND TRUST AND SAVINGS BANK, TRUSTEE, ET AL.

[No. 11,479.    Filed June 28, 1923.]

1. INFANTS.—*Guardian Ad Litem.—Duty of Court to Appoint.— Competency of Guardian.—Statutes.*—Where the trustee filed a complaint for the sale of a trust estate under the statute (§4032 Burns 1914, §2989 R. S. 1881) it was the imperative duty of the court to protect an infant defendant, and see that the child's weakness and incapacity should not operate to his injury and that his interest should not suffer from carelessness and improper conduct of parties to the litigation or of any officer of the court, and under the statute (§§259, 260, 4034 Burns 1914, §§258, 259, 2991 R. S. 1881) it was the duty of the court to select and appoint a proper person as guardian *ad litem,* who should be a person of sufficient capacity to understand the rights of the child and the appointment of a member of the bar was eminently proper.   p. 290.

2. INFANTS.—*Guardian Ad Litem.—Appointment of Attorney.— Compensation.*— Where an attorney at law was appointed guardian *ad litem* to represent an infant defendant in a trustee's action to sell the trust estate, he is an officer of the court, and cannot excuse himself from accepting the appointment, is entitled to have the court appointing him to determine suitable compensation to be paid for the services rendered and the court owes him a special duty to aid him in recovering just compensation; and as the court might make a proper allowance of its own volition, there can be no valid objections to an application in the form of a petition by the guardian *ad litem.* p. 291.

3. INFANTS.— *Guardian Ad Litem.— Compensation.— Payment from Trust Estate by Trustee.—Statutes.*—Where trustee filed a complaint for the sale of trust property under the statute (§4032 Burns 1914, §2989 R. S. 1881), compensation of the guardian *ad litem* of an infant defendant, who resisted the sale and whose services inured to the benefit of the trust estate, should be paid out of the trust estate as costs.   p. 293.

From Lake Superior Court; *Virgil S. Reiter,* Judge.

Action by William J. Whinery against the Hammond Trust and Savings Bank, Trustee, and others. From the judgment rendered, the former appeals. *Reversed with directions.*

*William J. Whinery,* for appellant.

*C. B. Tinkham,* for appellee.

In the year, 1911, Walter. H. Hammond and his wife Miami J. Hammond executed a deed to the Hammond Savings and Trust Company (now the Hammond Trust and Savings Bank) whereby they conveyed to the grantee lots 30 and 31 in Columbian addition to the city of Hammond, in trust for the use of the several beneficiaries therein named. In December, 1920, the trustee filed in the Lake Superior Court a complaint averring facts in substance as follows:

"That the plaintiff holds the legal title to the real estate for the uses and purposes stated in the deed; that certain ambiguities in the deed have heretofore been construed by the court, but that there still remain certain clauses of doubtful and ambiguous meaning; that there are at least two clauses which seem to conflict, viz.: the eighth and the eleventh; that clause eight gives the trustee the undoubted right to sell the real estate upon the consent of certain persons therein named; that clause eleven in terms denies the trustee's right to sell the real estate, and therefore the trustee is in doubt as to its power under the deed with reference to the sale of the real estate.

"That the twelfth clause of the deed makes it the duty of the trustee to create a special fund by setting aside a portion of the. income from the real estate, which fund is to be used first for the payment of taxes, special assessments, insurance, repairs, and other incidental expenses on two other certain lots in the city

of Hammond; that the remainder of the special fund shall be held inviolate until the final distribution of the trust estate, except that the trustee from time to time may distribute to the beneficiaries any excess thereof. That the trustee is in doubt whether the provision with respect to the duty of the trustee to pay the taxes, etc., on the other lots would remain a charge against the trust estate if the trust estate should be sold by the trustee, or whether that charge, in the event of the sale of the trust estate, would be transferred to the fund derived from the sale; that, if the charge should continue against the real property now held in trust after sale thereof, it would be a serious handicap to the sale; that the trustee believes that it would be to the interest of the beneficiaries if that charge would be transferred from the real estate held in trust to the proceeds of the sale thereof, provided a sale is duly authorized and consummated.

"That on May 19, 1917, the trustee leased the real estate which it holds in trust, consisting of two lots with a three-story brick building thereon, to one Eben N. Bunnell, for a term of twelve years from June 1, 1917, for a rental of $250 per month to June 1, 1919, and $300 per month thereafter until the expiration of the lease; that the lease grants an option to the lessee of extending the lease for a further period of ten years at a rental of $325 per month; that by the terms of the lease the trustee is required to pay all taxes and assessments against the property, to keep the building insured, and to keep the fire escapes, the roof, and the plate glass windows in repair; and that the expense and charges which the trustee is thus required to pay, absorb a large portion of the rent received.

That there are two mortgages on the trust property, which secure an indebtedness amounting in the aggregate to $19,500; that the income from the trust prop-

erty, after deducting the charges and expenses and interest which the trustee is compelled to pay, is not sufficient to discharge the mortgage indebtedness or any part thereof; that unless the mortgages are renewed or paid they will be foreclosed; that the plaintiff is unable to pay any part of the principal of the mortgage indebtedness unless the trust property is sold, and that until it is sold the mortgages must be renewed from time to time, and that quite a large expense attaches to each renewal or is occasioned by the procurement of other loans with which to pay the existing mortgages.

"That the trustee believes that it would be for the best interest of the beneficiaries of the trust to sell the trust property; that Eben N. Bunnell, the lessee of the property, has offered to purchase the real estate at and for the price of $38,500 in cash; that the trustee believes that sum to be as large, if not larger, than it could procure from any other person; and that the trustee believes that, in these circumstances, a sale for the sum offered by Bunnell would be advantageous to all interested parties.

"That the trustee is now, and since the date of the trust deed has been, administering the trust in accordance with the terms of the deed; that it has had full and complete control of the trust estate, has collected all rents and paid taxes and other expenses, including interest on loans, as in its discretion were proper to be paid; that it has turned over to Louis M. Heintz, who is still living, the net proceeds of the estate; that it has not now, nor has it any prospect of having, sufficient money to pay the indebtedness against the trust property; that, unless paid, the mortgagees will no doubt foreclose their mortgages, in which event the objects and purposes of the trust will be defeated, the corpus of the trust estate will pass out of the hands of this trustee, and the beneficiaries will thereby lose any and

all interest they may have therein; that on such account and for the reasons hereinbefore stated, the trustee believes that it would be for the best interest of all concerned to sell the trust estate at the price offered by Eben N. Bunnell, or to such other person as may offer a reasonable price therefor; that unless a sale is made the indebtedness and liens against the premises will continue to accumulate to the great injury of the interested parties; that Louis M. Heintz who is named in the eighth clause of the deed now expresses his willingness to file herein his consent to the sale of the real estate.

"That Laura Gould Rief is the mother of Lew F. Heintz; that Lew F. Heintz is now eleven years of age, resides with his mother in the city of Chicago, and is made a party to answer to his interest."

The prayer of the complaint is as follows: "That the trust deed be so construed as to give the trustee power and authority to sell the trust estate thereunder; that an order be entered authorizing the trustee to make such sale free from liens; that the trustee be authorized to pay the mortgage indebtedness out of the proceeds of the sale; that the trustee be authorized to continue as trustee under the terms of the deed and to hold the balance of the fund for the uses and purposes named in the deed; that the charge created against the trust fund by the twelfth clause of the deed be transferred to the net proceeds of the sale and that the trust property be sold free from any lien on that account; and for all other proper relief."

Frederick L. Heintz filed his consent to the sale of the trust property; Laura Gould Rief filed answer; William J. Whinery, a member of the bar, was appointed guardian *ad litem* for the child, Lew F. Heintz; all other defendants were defaulted.

The guardian *ad litem* filed an answer in two paragraphs, the first being the general denial. A demurrer

was sustained to his amended second paragraph of answer and thereupon the guardian *ad litem* prepared and filed a pleading denominated "cross-complaint" in which the infant defendant appeared as cross-complainant by his mother as next friend.

The so-called cross-complaint contains the following averments:

"That the trustee has no power to sell the trust property without first procuring from the court an order of sale; that a sale can lawfully be made only by complying with the statute governing sales of trust property (§4032 Burns 1914); that in construing the portions of the trust deed which the plaintiff asks to have construed, the entire deed should be considered and every clause and sentence thereof should be given its true legal effect; that the true meaning and intent of the deed is that the property shall not be sold so long as any one of the following persons is living, viz.: Louis M. Heintz, Johanna Heintz, Frederick L. Heintz, Laura Gould Rief; that the three last named persons are now living; that the true meaning of the deed is that the trust property shall be preserved intact for the infant defendant; that by the terms of the deed it is provided that the trust property shall become the property of the infant defendant upon the death of the four persons above named; that after the death of said four persons the trustee can retain control of the property until the infant defendant reaches the age of twenty-one years, and no longer; and that the infant now has a vested interest in the property.

"That the option in the lease which gives Bunnell the right to a further period of ten years as tenant is void; that the lease contains a further provision which gives Bunnell an option to purchase the real estate in June, 1920, at the price of $38,500; that the option to purchase is also void; that the real estate is

now reasonably worth $70,000; that Bunnell is insisting that a sale be made to him by virtue of his option; that the trustee is seeking to sell the property to Bunnell for $38,500; that if a sale to him be made on the terms stated in the option the trust estate will be irreparably damaged; that it is not to the interest of the trust estate to sell the property, especially not at the price of $38,500."

The cross-complaint contains an appeal to the court to protect the interest of the child in the trust estate; to assume jurisdiction over the trust for all purposes, more particularly for the purpose of protecting the interest of the child; to construe the deed in accordance with the allegations of the cross-complaint; to declare null and void the option to renew the lease for a period of ten years, and also the option to purchase the real estate; to restrain the trustee from carrying into effect either option; and to grant all other proper relief.

The court made a finding which establishes the following facts, in addition to other facts which need not here be set out:

That the lease contains a provision purporting to give to Bunnell the privilege of extending the lease for a further period of ten years from May 31, 1929, at a rental of $325 per month; that the lease also contains a provision purporting to grant to Bunnell an option to purchase, during the month of June, 1920, for cash the real estate described in the lease, on the condition that the option shall be void if not exercised in that month.

The court construed the deed as conferring on the trustee the power to sell the real estate held in trust when in the discretion of the trustee a sale shall be for the best interest of the estate *"and when exercised in good faith and for the benefit of the cestuis que trust named therein,"* (Our italics) without the aid of any

court, even though minors may be interested at the time of sale; that, in the event of sale the proceeds thereof shall bear the same burden as is borne by the property at the time of sale and that any charge thereon created by the deed and the lien of any incumbrance created by the trustee, shall be transferred to the proceeds of sale; that the trustee is empowered by the deed to lease the property therein conveyed; that the deed does not confer upon the trustee the power to give an option for a lease to take effect at some future time; that the deed does not confer upon the trustee any power to give an option to purchase the property at a future time.

The court ordered and decreed "that the trustee shall pay the costs duly taxed in this action, and he is hereby authorized to pay a reasonable attorney's fee to its attorney employed herein."

The guardian *ad litem* then filed his verified petition whereby he asked the court to make an allowance for his services. In his petition he recited the facts leading up to his appointment, the nature and extent of the services rendered, and that he had made expenditures from his own funds amounting to $2.34 which were necessary to the proper discharge of his duties. He asked that the court make an allowance in the sum of $500 for his services and $2.34 for the expenditures. With the petition he filed an itemized statement, specifying the time devoted and the character of the work done; and filed also the affidavits of two members of the bar in which they stated that the charges were reasonable. The trustee moved to strike the petition from the files. The court sustained that motion, ordered the petition stricken, and adjudged that the petitioner take nothing thereby. The appeal is from the action of the court on the petition.

DAUSMAN, J.—The only question for our determination is whether or not the trial court erred in its action on the petition filed by the guardian *ad litem*. We have set out the pleadings, the finding, and the decree, in the main action, for the reason that they are inseparably connected with the question to be decided in this appeal. The main action is the source of those elements which exert a controlling influence on the questions whether an allowance ought to be made; and if so, by whom the allowance ought to be paid.

It is apparent that the complaint was intended to serve a double purpose: (1) as a complaint to obtain a judicial construction of an instrument creating a trust (Pomeroy, Equity Jurisp. §1064); and (2) as a complaint for the sale of the trust estate (§4032 Burns 1914, §2989 R. S. 1881).

It is averred in the complaint that the defendant Lew F. Heintz is a mere child, being eleven years of age. That averment put upon the court the imperative duty to protect the infant defendant. The court was required to protect the interests of the minor who was thus brought before it as a litigant, and to see that the child's weakness and incapacity should not operate to his injury and that his interests should not suffer from the carelessness or improper conduct of other parties to the litigation or of any officer of the court. The law placed the rights and interests of the child in the special care of the court, and it was the duty of the court to exert its utmost power to prevent anything being done to the detriment of the child. The first step to be taken in the discharge of that duty was to select and appoint a proper person as guardian *ad litem* to protect the child's interest in the litigation. §§259, 260, 4034 Burns 1914, §§258, 259, 2991 R. S. 1881. It was the duty of the court to select for that purpose a person of sufficient capacity to

understand the rights of the child and to manage his interests in the subject of the litigation. It was eminently proper, therefore, that the court should choose from the gentlemen of the bar. Indeed, in the appointment of guardians *ad litem* it is the duty of the court to select men learned in the law and capable of taking care of the interests of their wards.

Where litigants are of full age they are presumed to be capable of choosing counsel to represent them and capable of making their contracts with respect to compensation. But infant defendants are the wards of the court and the court must represent

2.

them in the procurement of counsel. An officer of the court, selected by the court to protect the interests of minors, cannot ordinarily excuse himself upon good grounds from accepting the appointment; and he should not be expected to perform his duties without compensation. As the court has the power to appoint a guardian *ad litem* and impose duties upon him for the benefit of a minor, it is but an incident to that power that it may allow him suitable compensation to be paid as the equity of the case shall require. *Kerbaugh* v. *Vance* (1880), 5 Lea (Tenn.) 113. See, also, *Walker* v. *Hallett* (1840), 1 Ala. 379; *Robinson* v. *Fidelity Trust, etc., Co.* (1889), 11 Ky. Law Rep. 313, 11 S. W. 806; *Snyder* v. *Fidelity Trust, etc., Co.* (1893), 14 Ky. Law Rep. 615; *Tyson* v. *Richardson* (1899), 103 Wis. 397, 79 N. W. 439; *Richardson* v. *Tyson* (1901), 110 Wis. 572, 86 N. W. 250, 84 Am. St. 937. In Illinois the subject is controlled by statute: *Gagnon* v. *Burton* (1902), 107 Ill. App. 506; *Smith* v. *Smith* (1873), 69 Ill. 308; *Hutchinson* v. *Hutchinson* (1894), 152 Ill. 347, 38 N. E. 926.

Prior to the appointment, Mr. Whinery was a member of the bar and therefore, in a general sense, an officer of the court. By the appointment, the court

made him its officer in a more special sense. It is the duty of a court to protect its officers. *Miedreich* v. *Rank* (1907), 40 Ind. App. 393, 82 N. E. 117. It is the special duty of a court to encourage by every reasonable means and to every reasonable extent whoever stands in the character of guardian *ad litem* or next friend on behalf of an infant, when acting in good faith for the benefit of the infant. *Richardson* v. *VanVoorhis* (1888), 3 N. Y. Supp. 396.

When the attorney accepted the trust imposed upon him by the order of the court it became his duty to investigate the law and the facts and to use due care and diligence in his efforts to protect the rights and interests of his ward; and, if the interests of the infant had suffered by any neglect or mismanagement of the guardian *ad litem,* undoubtedly the latter would be liable by reason thereof. From the record before us it appears that the guardian *ad litem* exercised care and diligence in his effort to protect the infant's rights in the subject of the litigation, and that he is entitled to receive suitable compensation for his services. The court owed him the special duty to aid him in recovering just compensation, if within its power so to do. The proper and usual manner of discharging that duty is to make an allowance in the cause in which the appointment was made. The court may make such an allowance of its own volition and without awaiting a request therefor. Sometimes the allowance is made upon motion or upon the filing of an account. We perceive no reason why an application in the form of a petition is not a proper manner of presenting the subject to the court.

The petition now under consideration is not an intervener's petition. It is readily distinguishable also from a petition by a litigant asking an allowance for an attorney's fee on account of services rendered by an at-

torney employed by the litigant. It is the petition of the court's own officer who was brought into the case by the appointment and order of the court, and who has rendered services pursuant to the duty imposed upon him by the court. His petition is but an incident of the main action.

Now, by whom should his compensation be paid? We are not favorably impressed by the conduct of the trustee. From the complaint alone it appears that 3. the trust estate was sorely in need of protection from some source. Apparently the adult defendants did not see fit to make a defense and the only resistance to the complaint came from the guardian *ad litem*. It is a clear inference that he felt compelled to bring in a next friend to file a cross-complaint in behalf of the infant because of the ruling on the demurrer to the amended second paragraph of his answer; and that the ruling on the demurrer was due to the narrow decisions in the following cases: *Spencer v. Robbins* (1886), 106 Ind. 580, 5 N. E. 726; *Gibbs v. Potter* (1906), 166 Ind. 471, 77 N. E. 942, 9 Ann. Cas. 481; *Ziegler v. Ziegler* (1906), 39 Ind. App. 21, 78 N. E. 1066. However, the entire defense might have been made under the general denial. Nevertheless, the services rendered by the guardian *ad litem* have inured to the benefit of the trust estate and thereby the interests of all the beneficiaries have been promoted. On this ground it is proper to order that the allowance to the guardian *ad litem* be paid by the trustee as costs.

If the guardian *ad litem* had resisted the action of the court in authorizing the trustee to pay from the trust estate compensation to its own attorney for services rendered in the main action, we could readily understand the propriety of that resistance; but we perceive no valid reason why the trustee, who is presumed to be impartial as between beneficiaries, should resist

the making of an allowance to the guardian *ad litem* to be paid from the trust estate.

The amount to be allowed to the guardian *ad litem* must be left to the sound discretion of the trial court; and on that feature we express no opinion.

The judgment denying an allowance to the petitioner is reversed; and the court is directed to reinstate the petition, to hear evidence on the value of the services, to allow the petitioner reasonable compensation, and to order the payment thereof by the trustee as costs.