## AMERICAN AUTOMOBILE INS. CO. v. TAYLOR et al.

### No. 4575.

District Court, N. D. Illinois, E. D.

Dec. 1, 1943.

Eckert & Peterson, of Chicago, Ill., for plaintiff American Automobile Ins. Co.

Edward B. Casey, of Chicago, Ill., for defendant Thomas Barassi.

Thomas C. Hollywood, of Chicago, Ill., for defendants Elsworth Wayne Taylor, Elsworth E. Taylor, and Hazel Taylor.

Miller, Gorham, Wescott & Adams, of Chicago, Ill., for defendants Fred Nast and Milton P. Goldberg.

CAMPBELL, District Judge.

The facts in this case seem clearly established by the testimony of Mrs. Hazel Taylor and Mr. Fred Nast. As to most of the testimony of Elsworth E. Taylor and Elsworth Wayne Taylor and as to some of the testimony of Thomas Barassi, I am compelled to note from my observation of them while they were testifying and from what they said that their testimony was obviously untrue. Applying the oft repeated jury instruction to their testimony, I am forced to disregard it in its entirety except in so far as it is corroborated by other credible evidence.

This is a suit for a declaratory judgment wherein plaintiff asks a declaration of its obligation, if any, to Elsworth Wayne Taylor under a policy of liability insurance issued to Elsworth E. Taylor and arising from an automobile accident occurring December 28, 1941, involving the automobile described in the policy. The obligation, if any, of the plaintiff to Elsworth Wayne Taylor would arise under the so-called omnibus clause in the policy which reads as follows:

"Definition of 'Insured'. Except where specifically stated to the contrary, the unqualified word 'insured' wherever used in Coverage A and in other parts of this policy, when applicable to such coverage, includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided the declared and actual use of· the automobile is 'pleasure and business' or 'commercial', each as defined in this policy, and provided further, the actual use is with the permission of the named insured. The provisions of this paragraph do not apply:

"(a) to any person or organization with respect to bodily injury to or death of any person who is a named insured;

"(b) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station, or pub-

lic parking place, with respect to any accident arising out of the operation thereof;

"(c) to any person or organization with respect to any trailer while used with any automobile not covered by like insurance in the Company;

"(d) to any employee of an insured with respect to any action brought against said employee because of bodily injury to or death of another employee of the same insured injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such insured."

The facts are that the car insured by the plaintiff was the property of Elsworth E. Taylor and was operated regularly by him and with his permission by his wife, Hazel Taylor, as a family car. Their son, Elsworth Wayne Taylor, was strictly forbidden by his father to operate the car under any circumstances. On Friday, December 26, 1941, the battery in the Taylor car was dead and Mr. Nast from the service station in the neighborhood of the Taylor home had been summoned to remove the battery and recharge it and place a rental battery in the car during the interim. He arrived at the Taylor home in the evening and was directed by Elsworth E. Taylor to the garage in the rear. When he arrived there, he was admitted to the garage by Elsworth Wayne Taylor. Mr. Nast installed the rental battery and then asked Elsworth Wayne Taylor to start the motor so that he could see whether or not the rental battery was charging properly. The boy started the motor. Everything was satisfactory. Mr. Nast left with the Taylor battery and took it to his service station.

On the afternoon of December 28, 1941, Mrs. Hazel Taylor drove the car into the service station of Mr. Nast to have the rental battery removed and their own recharged battery reinstalled. An attendant of the service station took the car and placed it over a greasing pit. Mr. Nast thereupon brought out the Taylor battery, removed the rental battery, and replaced the original. In doing so, he stood at the right side of the car, alongside the motor. Standing beside him, adjacent to the right front door of the car, was Mrs. Taylor. Opposite her, on the other side of the car, next to the left front door, was Elsworth Wayne Taylor. In front of the car, against the wall of the service station, was Mr. Thomas Barassi. All were watching

Mr. Nast place the battery in the car and a conversation was carried on during this operation by Mrs. Taylor, Mr. Barassi and Mr. Nast. When Mr. Nast finished installing the battery, he straightened up, looked toward Elsworth Wayne Taylor and said, "Would you mind starting your motor, please?" Mrs. Taylor replied that she would get in and start the motor, and started toward the rear of the car to go around to the driver's side, but before she arrived at the left side of the car, Elsworth Wayne Taylor had climbed into the car and pressed the starter button. The motor started and the car lunged forward, striking and injuring Mr. Barassi. In a suit subsequently instituted in the State Court by Mr. Barassi to recover damages for his injuries, Elsworth Wayne Taylor among others is named as defendant.

The question to be determined is whether under the foregoing facts Elsworth Wayne Taylor was "using the automobile", and if so, whether such "actual use" was "with the permission of the named insured" so as to entitle him to the protection of the public liability insurance issued by plaintiff.

I am much impressed with the definition given the terms "use" and "using" by the Ohio Court of Appeals in construing an automobile liability insurance policy in the case of Brown v. Kennedy, cited by plaintiff in its brief (Ohio App., 49 N.E.2d 417, 418; 141 Ohio St. 457, 48 N.E.2d 857), as follows:

"In the instant case the terms in question are 'use' and 'using'. Now a car would be used by a person, whether it was operated personally or through the services of another. If the insurer meant that liability should only attach when it was being operated or driven by the owner or some one with his consent, and it is claimed the word 'used' includes the term 'operated'— then the insurer should have employed the word carrying in its meaning the narrower limitation of liability.

"The word 'use' is defined as the 'purpose served—a purpose, object or end for useful or advantageous nature.' (Oxford English Dictionary.)

"This implies that the person receives a benefit from the employment of the factor involved. It is this benefit, purpose, or end which defines the use. I use a chisel to chip out a piece of wood. The removal of the wood is the use to which I put the tool. I use a book, for the purpose of

transmitting the thought of the author to my brain. It is used as a vehicle for thoughts or ideas. I use a pen or pencil to draw a sketch or write a letter. The pen or pencil is thus an instrument by which I receive the benefits of having the diagram or thought in my brain impressed upon the paper. I employ an automobile for the purpose of transportation. I use it for the purpose of going from here to there. It is immaterial as far as this use, this benefit, this purpose, this end is concerned, whether in so acquiring this benefit, I actually operate the driving mechanism of the vehicle or employ another to do it.

"Certainly, no one would say the owner himself was not using his automobile because his chauffeur operated the vehicle. How then does use by a permittee become limited to a case only where such permittee operates the driving mechanism of the vehicle?

"In the instant case, the owner of the car, according to the findings of fact, gave his daughter permission to use the car. This permission was not limited to operation merely. A judgment was obtained against her for injuries caused by the operation of the car when she was using it for her own purposes, it being driven by another. * * *

"Certainly, it would be a narrower application of the term used, ignoring the general considerations mentioned, to require one using the car to use it in its entirety. The daughter of the insured was using the seat, which she occupied. She was using the sides and top to shelter her from the weather. She was using the wheels and tires, for upon them she was propelled through space. She was using the motor of the car, for by its power the vehicle in which she was riding was propelled along the road. Is all of this use to be ignored, simply because she did not hold the wheel —manipulate the gear shift, press the accelerator or brake pedal? Manifestly, this is restricting the full reasonable words, which the insured has written."

█ Applying this broad definition to the same terms as they appear in plaintiff's policy, it seems clear that the car was actually being "used" at the time of the occurrence on December 28, 1941, by the owner, Elsworth E. Taylor, to have placed therein his battery which had been recharged and repaired at his direction. It was necessary for the car to have a battery in order to operate. The car was the prop-

erty of Elsworth E. Taylor; he had directed the recharging and replacing in the car when recharged of his battery. Anyone carrying out this direction was "using" the car for and on behalf of the owner, Elsworth E. Taylor.

Counsel for plaintiff skillfully argue in their reply to the brief of Thomas Barassi that if the foregoing reasoning is correct, even Nast who was replacing the battery would be in that operation the agent of Elsworth E. Taylor and that "obviously this is not so". The reason this "obviously is not so", however, is because of the clear relationship of independent contractor occupied by Mr. Nast in this regard. Were he not such an independent contractor engaged, among other things, in the business of repairing, recharging and reinstalling batteries and was assisting in such an operation on the Taylor car he would in my opinion clearly be the agent of the owner, Elsworth E. Taylor.

In order that the broad language of the policy would not extend coverage even to such an independent contractor, the plaintiff company has felt it necessary to specifically exclude him in subparagraph (b) of the omnibus clause set forth above.

It is, therefore, my opinion that Elsworth Wayne Taylor in starting the motor at the general request of Mr. Nast on December 28, 1941, was the implied agent of his father, and that the car at that time and place, was being used by the "named insured" in and about his duty and business of providing the same with a workable battery. The situation is analogous in my opinion to the implied agency that would exist if the boy were washing the car or changing a tire thereon in the necessary task of maintaining the car in a presentable and usable condition and without specific direction from the father so to do. In none of these instances is the son operating the car or himself using it. The use is that of the father who is the named insured.

Such use therefore is not in disobedience of the father's orders. It is my opinion that the omnibus clause referred to is applicable in this instance to Elsworth Wayne Taylor and it is the duty of the plaintiff to extend the full coverage of its policy to him in the case now pending in the State Court wherein Thomas Barassi is plaintiff.

Counsel for Elsworth Wayne Taylor may prepare and file with the Court, in writing, within fifteen days from the date hereof,

604

proposed findings of fact, conclusions of law, and a draft of a proposed decree, consistent with the views herein expressed, delivering copies thereof to counsel for the plaintiff and other defendants. Within fifteen days of the receipt of such copies counsel for the plaintiff or other defendants may prepare and file with the Court, in writing, their observations with reference thereto and suggestions for the modification thereof, delivering a copy of such observations and suggestions to counsel for Elsworth Wayne Taylor. Within five days thereafter counsel for Elsworth Wayne Taylor may present to the Court, in writing, his reply to such observations and suggestions. Whereupon, the matter of making findings of fact, conclusions of law and a decree herein will be taken by the Court without further argument.