ST. PAUL INSURANCE COMPANY, Plaintiff-Respondent,

v.

Donald Richard CARLYLE, Defendant, and Brenda Joyce Jimmerson, L. C. Jimmerson and Alene Jimmerson, Defendants-Appellants.

ST. PAUL INSURANCE COMPANY, Plaintiff-Respondent,

v.

Donald Richard CARLYLE, Defendant-Appellant, and Brenda Joyce Jimmerson, L. C. Jimmerson and Alene Jimmerson, Defendants.

Nos. 8686, 8691.

Springfield Court of Appeals, Missouri.

May 17, 1968.

Charles C. Hatley, Sharp & Hatley, New Madrid, for defendants-appellants Brenda Joyce Jimmerson, L. C. Jimmerson and Alene Jimmerson.

Roderic R. Ashby, Charleston, for defendant-appellant Donald Richard Carlyle.

Dwight Crader, Sikeston, for plaintiff-respondent.

HOGAN, Presiding Judge.

One Friday evening in March 1966, Richard Parker, then 18, took the family car from East Prairie to New Madrid, "just riding around." On the way to New Madrid he acquired a number of teen-age passengers, among whom were Donald Carlyle and Brenda Jimmerson. During the course of the evening, Richard stopped at a "restaurant and cafe, like," and went inside "to use the bathroom." He either asked Donald to "take the car to the corner" or drive around the block, one of the two, and he went inside. After Donald had started to drive, he pushed the lever to ad-

just the front seat, lost control of the car, and struck a utility pole. Brenda was injured. The question, or principal question, in the case is whether Donald is covered by the insurance policy issued to Richard's father by the plaintiff. The insurer has had a declaratory judgment that Donald is not covered. Donald, Brenda and Brenda's parents have appealed. In practical effect, the two appeals were consolidated and submitted as one in this court.

■ The policy in suit, as do most if not all of its kind, contains what is called an "omnibus clause." This provision extends the protection of the policy against liability for personal injury not only to the named insureds (Richard's father and mother) and the resident members of their household, but also to " * * * any other persons using [the insured] automobile with the permission of the named insured, provided his actual operation or * * * other actual use * * * is within the scope of such permission. * * * " What we have to consider here, in a legal sense, is the operation and effect of this omnibus clause in a "second permittee" or "sub-permittee" situation; that is, whether the coverage of an omnibus clause extends to a third person operating the insured automobile with the consent or at the direction of a permittee of the named insured. This kind of case has often been before the courts; some idea of the profusion and variety of opinions which have resulted may be drawn from the fact that one of the latest collations of authority [1] runs to 123 closely printed pages and contains many rulings which cannot be entirely reconciled and harmonized even in a single jurisdiction. The most superficial examination of the general authority shows that it is difficult, if not impossible, to lay down specific rules of decision which are applicable in every situation of this kind. As we pointed out in Helmkamp v. American Family Mutual Insurance Co., Mo.App.,

407 S.W.2d 559, our courts have not gone so far as to hold—as both appellants urge we now should—that when the named insured grants his permittee broad and unfettered dominion over his insured automobile, he also impliedly authorizes the permittee to allow a third person to use it and thus to constitute the second permittee an additional insured, though that view is apparently taken by a growing number of courts. See, for example, State Farm Mutual Automobile Insurance Co. v. Williamson, 9 Cir., 331 F.2d 517, 519–520 [2]; Baesler v. Globe Indemnity Co., 33 N.J. 148, 162 A.2d 854, 857 [3]. At this writing our courts have gone no further than to say that "the insured's conduct, or the nature and scope of the permission granted by him *may be such* [our emphasis] as to indicate permission to [the second permittee], or to authorize the first permittee in turn to permit [the second permittee] to use the automobile so as to bring the second permittee within the coverage of the policy." Haynes v. Linder, Mo.App., 323 S.W.2d 505, 510–511 [9]. Probably the true rule, and the rule of decision upon which we proceed, is that every case requires a factual determination whether or not the initial grant of permission impliedly authorized the permittee to allow a third person to use the automobile, thus rendering the second permittee an additional insured under the omnibus clause. Anno., supra, 4 A.L.R.3d at 25–28, § 3 [a]; 7 Am.Jur.2d Automobile Insurance, § 116, p. 431.

■ One of the arguments advanced by both appellants is that coverage should be extended to Donald because he was operating the vehicle for Richard's benefit; that is, Donald was driving the car around the block while Richard "used the bathroom." Contrary to our initial impression, counsel are not being facetious. As we noted in the *Helmkamp* case, recovery under the omnibus clause has been allowed in some cases

---

1. Annotation, "Omnibus Clause of Automobile Liability Policy as Covering Accidents Caused by Third Person Who is Using Car with Consent of Permittee of Named Insured," 4 A.L.R.3d 10 (1965).

where the second permittee, without the first permittee's being present, is otherwise serving some purpose for the first permittee. Helmkamp v. American Family Mutual Insurance Co., supra, 407 S.W.2d at 569–570, and cases cited marginally note 11; Anno., supra, 4 A.L.R.3d at 115–122, § 15. This is not, however, such a case. Richard could not "use the bathroom" without leaving the car, but it was not further necessary for his purpose that the car be driven around in his absence, and the record does not bear out appellant Carlyle's assumption that it was Richard's idea to drive around the block while he went inside. The record evidence from Richard was that he had told Donald to " 'take the car to the corner and wait,' or 'take it around the block and come back after me,' but I don't know and it has been a long time ago." Appellant Brenda Jimmerson testified that one of the passengers was a girl named Holly Dorris, and she testified further: "Q. Did anyone else in the car say anything at that time? A. At that time? Q. Yes. A. *Holly made the suggestion that he drive, that Don drive around the block instead of sitting or waiting there for Ricky*. Q. Why didn't you wait in front of this place while he went to the bathroom and came back out and got in the car? A. I don't know. Q. Was there any discussion about that? A. Holly said that she just wanted to ride around while he was in there. *She made the suggestion that he drive and Ricky asked him to drive then.*" (Our emphasis.) In our view, it was Holly's purpose and not Richard's which was being served by the trip around the block.

Otherwise the appellants compare the facts of this case to those of certain adjudicated cases, for example, Mazdra v. Selective Insurance Co., Mo., 398 S.W.2d 841, and the *Helmkamp* case, supra, 407 S. W.2d 559, and argue that in no previously reported case did the first permittee have such broad, unrestricted use of the vehicle; therefore we should hold that the original permission granted by the named insured in this case was broad enough to include the power to delegate this permission to a third person. Specific circumstances to which they call attention as being determinative are that Richard had a set of keys to the car and had what they called "a financial interest" in it.

■ We believe the appellants have overstated their case. Richard did have a set of keys to the car, but he explained that he himself had had them made; they were not given to him by his father. At one place, Richard, being asked "how much did you pay on it [the car]?" answered, "Five dollars." This evidence continued: "Q. You paid five dollars on this car? A. Yes. Q. Is that all you paid? A. That is all." Certain other isolated statements are relied on, such as Mr. Parker's statement that he "told him [Richard] to take the car and drive it as though it was his own car," and his further statement that he took part of the money Richard gave him and made a car payment. Nevertheless, if the record is considered as a whole, it cannot be said that Richard had permission to use the insured vehicle which was unrestricted in scope or range, if indeed that would be determinative. Richard always asked when he wished to use the car; his statement was that "I didn't have to, but I did." When he was asked if it was true that he "drove this car just about any time you wanted to and went anywhere you wanted to in it without your Dad's permission," Richard answered: "No. It isn't. I could have if I had wanted to but I didn't." Mr. Parker's evidence was that Richard always asked permission to use the car, though he never refused permission if Richard asked and the car was not otherwise in use. In short, Richard's use of the car was by express permission, requested and renewed in each instance, subject perhaps to an uncertain right of use without expressly asking, which Richard believed would have been approved and ratified. Such a right of use does not, in our opinion, amount to free and unfettered dominion over the car. Nor is this a case in which, by a course of repeated acts or continued conduct, the named

insured knowingly acquiesced to use of the car by third persons. On two previous occasions Donald and some other youngsters had "practiced" with the car, but this practice was had with the named insured's express permission, and otherwise no others had ever been permitted to drive the vehicle unless, as Richard put it, "someone had stolen the car" without his knowledge. This is not a case in which the first permittee was riding in the automobile, though his presence in the vehicle would certainly not be decisive, inasmuch as the notion of joint ventures between minors in the operation of an automobile has been completely repudiated in this state. Bell v. Green, Mo., 423 S.W.2d 724, 730–731 [3] [4, 9]. Taken in sum, the evidence simply does not present a set of facts and circumstances from which the first permittee's authority to delegate his permission to another can reasonably be inferred, and in our opinion the trial court correctly held that Donald was not covered as an omnibus insured.

The other—and perhaps more difficult—aspect of these appeals has been quite informally presented by motion. Both attorneys representing the minor appellants have filed motions in this court asking for allowances as guardians ad litem for their wards and clients. These motions raise questions which call for at least some discussion.

■ It may readily be granted that one who serves as guardian ad litem is entitled to reasonable compensation, and if he is an attorney and acts as counsel for his ward and the services were necessary, he is entitled to a reasonable fee for his combined services as guardian and as an attorney. Ragan v. Looney, Mo., 377 S.W. 2d 273, 276 [3]. As the matter was well stated in Walton v. Yore, 58 Mo.App. 562, 565, "[i]f the law were otherwise, the rights of infants would be at the mercy of any one who saw fit to invade them." The trouble here is that the minor defendants had no estates nor was there any fund in court out of which allowances could be made. Recognizing the difficulties of the situation, the trial court, apparently without objection by the plaintiff, allowed each guardian ad litem a fee of $250.00 to be taxed as costs, and further taxed all costs of the action against the plaintiff. Perhaps there is authority, as well as moral justification, for this action, for as our Supreme Court stated in Ragan v. Looney, supra, 377 S.W.2d at 276, " * * * such allowances, even in the absence of express statute, have been assessed as costs." [2] Be that as it may, the propriety of the trial court's action in allowing the guardians' fees and in taxing all costs to the plaintiff is not before us; the award of costs by the trial court represents a specific judgment for costs. It was not questioned by a timely motion for new trial, and therefore is not subject to review here. Schmitt v. Pierce, Mo., 379 S.W.2d 548, 551 [4, 5]; Beecham v. Evans, 136 Mo.App. 418, 420–421, 117 S.W. 1190, 1191.

■ The authority of this court to order an additional allowance for services on appeal is a different matter. It may be that in some cases it is the duty of a guardian ad litem to appeal from a decision adverse to his ward, 43 C.J.S. Infants § 126, p. 362, but in analogous cases which we consider persuasive, we have concluded that we are wholly without jurisdiction to order allowances such as counsel seek. Price v. Price, Mo.App., 281 S. W.2d 307, 314 [20]. Moreover if, as we believe, the power to award or order compensation derives from the duty or power

2. See also Section 527.100 RSMo (1959), V.A.M.S., providing that in declaratory judgment actions " * * * the court may make such award of costs as may seem equitable and just"; Galloway v. Wesley, 146 Kan. 937, 73 P.2d 1073, 1078 [2] [3], approving action similar to that taken here under a statute comparable to Section 527.100; and Anno., 30 A.L.R.2d 1148, 1154–1156, § 6 (1953).

to appoint a guardian ad litem,[3] the allowances for any necessary services on appeal should have been made by the trial court, if they were to be made at all. We must therefore decline to order any additional allowances to the guardians ad litem.

For the reasons indicated, the judgment is in all respects affirmed.

STONE and TITUS, JJ., concur.

3. Ragan v. Looney, supra, 377 S.W.2d at 276; Jones v. Yore, 142 Mo. 38, 48, 43 S. W. 384, 387; Whinery v. Hammond Trust & Savings Bank, 80 Ind.App. 282, 140 N.E. 451, 454 [2]; In re McKeown's Estate, 394 Pa. 186, 147 A.2d 331, 332 [2].