Sharon K. WHELCHEL, a Minor by Her Mother and Next Friend, Mrs. Noble Dagley, Appellant,

v.

Ethelyn SOMMER, Administratrix of the Estate of Richard Lee Beezley, Deceased.

Allstate Insurance Company, Appellee.

No. 19494.

United States Court of Appeals Eighth Circuit.

July 10, 1969.

Thaine Q. Blumer, of Blumer, Wright, Bittiker & Rocha, Kansas City, Mo., for appellant.

R. Lawrence Ward, of Shughart, Thomson & Kilroy, Kansas City, Mo., for appellee; Harry P. Thomson, Jr., Kansas City, Mo., on the brief.

Before VOGEL, Senior Circuit Judge, and MATTHES and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

This is an appeal from a judgment in favor of the garnishee, Allstate Insurance Company (hereinafter referred to as "Allstate"), and against the garnishor, Sharon K. Whelchel (hereinafter referred to as "appellant"), rendered September 19, 1968, by the United States District Court for the Western District of Missouri, Honorable Richard M. Duncan presiding.

A factual background is necessary to an understanding of the proceedings which led to this appeal. Sometime prior to December 31, 1960, Orlando Camp purchased a 1955 Chevrolet auto-mobile (hereinafter sometimes referred to as "the Chevrolet," "the Camp auto-mobile," or "the automobile"). He procured from Allstate a policy of liability insurance with himself as the named insured. The automobile was purchased primarily for the benefit of his son, William Camp, who at that time was 18 years old and lived with his family at Springfield, Missouri. Both the father and the son contributed to the purchase price of the automobile, but the father took title in his name. Thereafter William was inducted into the Army and stationed at a missile base in Lawson, Missouri. After his induction he married Sandra Lee Camp, a minor, and on December 31, 1960, they resided at an apartment in Excelsior Springs, Missouri. By this time William had reimbursed his father for the father's contribution toward the purchase of the Chevrolet.

The record discloses and the district court found that prior to William's induction and marriage, he had been directed by his father to allow no other person to drive the automobile. Subsequent to his marriage, William was instructed by his father not to permit Sandra, who did not have a driver's license, to drive the automobile except in case of an emergency. Sandra's testimony was that the only time she used it was to go to the laundry. William testified that he gave Sandra a set of keys for use in case of an emergency but that she "very seldom" drove. The court found that William gave his wife permission to drive the automobile "on a few occasions" to the grocery store. But at no time did he grant any other person permission to use the automobile. There was evidence, however, that "on occasions" persons had driven it without William's knowledge.

On December 31, 1960, the Camps and a number of other young couples attended a New Year's Eve party in the apartment of Mr. and Mrs. Schley, located across the hall from the Camp apartment. About 8:30 that evening Sandra, without the knowledge or consent of William, used the Chevrolet for the dual

purpose of taking one of the guests to report for work and picking up another person, Gardner. Sandra left the apartment along with some of the guests, including Mr. Schley and Richard Beezley. With Sandra driving one of the guests was taken to his place of employment. The group them proceeded to Gardner's home. He was not there. Sandra and the other guests then continued to drive around Excelsior Springs and the immediate environs. While driving through a park, the Chevrolet hit an icy spot in the road causing it to skid. Sandra, who suffered from a heart condition, became frightened and hysterical. There was some testimony that she lost consciousness. Schley assumed operation of the automobile, and the group continued to drive about Excelsior Springs and the surrounding country with Sandra still in a state of hysteria.

After the group left the Schley apartment, Gardner arrived at the party. When Sandra and her companions failed to return within an hour, the wife of one of the men became alarmed and left with several others in another car to search for them. The Camp automobile was located by the searching party, and was followed into the country several miles where it entered a schoolyard. The other car also stopped at the schoolyard. Sandra was taken from the Chevrolet and placed in the other automobile. At this point there was some shifting in the occupants of the two automobiles. Beezley, a friend of William, began driving the Chevrolet. While attempting to pass the other automobile, Beezley lost control of the Chevrolet and had a serious accident which caused his death and injuries to appellant.

Appellant, a citizen of Missouri, brought suit against the administrator of Beezley's estate in the Circuit Court of Buchanan County, Missouri, and on January 30, 1964, obtained a judgment of $25,000 for personal injuries sustained in the accident. The judgment being unsatisfied by the Beezley estate, appellant summoned Allstate as garnishee, contending that Beezley was an additional insured under the liability policy issued to Orlando Camp. Allstate, incorporated under the laws of Illinois and not having its principal place of business in Missouri, removed the garnishment proceedings to the federal district court on the ground of diversity of citizenship.

The omnibus clause of the liability policy insures:

"1. The named insured with respect to the owned or a non-owned automobile; * * *

3. Any other person with respect to the owned automobile, provided the actual use thereof is with the permission of the named insured. * * *"

At the trial, appellant contended that Beezley was an additional insured under the terms of the omnibus clause. Judge Duncan held that despite Orlando Camp's specific instructions that no person other than William Camp was to drive the Chevrolet, William did have implied authority to authorize others to use the vehicle because of the complete control he exercised over it; that in spite of this, neither Orlando nor William Camp authorized Sandra to drive the automobile except under emergency conditions; that William was not aware that Sandra had taken the automobile the night of December 31, 1960, though he may have known she was leaving; that William did not authorize any other person to drive it; and that there was no implied authority for Beezley to drive because of the "emergency."

Concluding that Beezley was not an additional insured under the omnibus clause, Judge Duncan determined that the garnishee was not liable to the garnishor and entered judgment in favor of Allstate. From this judgment, appellant has appealed contending, alternatively, that Beezley is an additional insured under the policy in question because: (1) he was driving with the implied permission of the legal owner and named insured; (2) the actual use of the automobile was for the benefit of William Camp; or (3) the abandonment of the automobile in an isolated rural area cre-

ated an emergency from which permission for Beezley to return it to William can be implied.

The parties agree that Missouri law controls. We therefore delineate the position taken by the Missouri courts on the question of implied permission under the omnibus clause. The St. Louis Court of Appeals recently stated:

"There is no question that the permission provided for in the omnibus clause can be either express or implied from the conduct of those in position to give it. But as a general rule the person claiming such permission must prove it, and no implied permission can arise merely because someone obtained possession of the property and used it without the knowledge of the named insured. Varble v. Stanley, Mo.App., 306 S.W.2d 662; McKee v. Travelers Insurance Company, Mo. App., 315 S.W.2d 852. Whether permission be expressly granted or impliedly conferred, it must originate in the *language or conduct of the named insured* or someone having authority to bind him in that respect. Hooper v. Maryland Casualty Company, 233 N.C. 154, 63 S.E.2d 128. Usually, an implied permission arises from a course of conduct of the parties over a period of time *prior* to the use in question. Alabama Farm Bureau Mutual Casualty Insurance Company v. Robinson, 269 Ala. 346, 113 So.2d 140." Hanover Ins. Co. v. Abchal, 375 S.W.2d 605, 608–609 (Mo.App.1964).

The Missouri Supreme Court, in Mazdra v. Selective Ins. Co., 398 S.W.2d 841 (Mo.1966), adopted the substance of the above-quoted language and added that "there must be knowledge of the facts in order that there may be acquiescence of a named insured which would give rise to an implied permission of another to use an insured automobile." *Id.* at 844. Furthermore, the Springfield Court of Appeals adds that:

"* * * the permission contemplated by the omnibus clause is something more than mere sufferance or tolerance without taking steps to prevent, that term being used rather in the sense of leave, license or authority with the power to prevent." Bourne v. Manley, 435 S.W.2d 420, 427 (Mo. App.1968).

That same court has spoken decisively on the problem now before us:

"What we have to consider here, in a legal sense, is the operation and effect of this omnibus clause in a 'second permittee' or 'sub-permittee' situation; that is, whether the coverage of an omnibus clause extends to a third person operating the insured automobile with the consent or at the direction of a permittee of the named insured. * * * [O]ur courts have not gone so far as to hold—* * * that when the named insured grants his permittee broad and unfettered dominion over his insured automobile, he also impliedly authorizes the permittee to allow a third person to use it and thus to constitute the second permittee an additional insured, though that view is apparently taken by a growing number of courts. * * * At this writing our courts have gone no further than to say that 'the insured's conduct, or the nature and scope of the permission granted by him *may be such* * * * as to indicate permission to [the second permittee], or to authorize the first permittee in turn to permit [the second permittee] to use the automobile so as to bring the second permittee within the coverage of the policy.' * * * Probably the true rule, and the rule of decision upon which we proceed, is that every case requires a factual determination whether or not the initial grant of permission impliedly authorized the permittee to allow a third person to use the automobile, thus rendering the second permittee an additional insured under the omnibus clause. * * *" St. Paul Ins. Co. v. Carlyle, 428 S.W. 2d 753, 755 (Mo.App.1968) (citations omitted).

Helmkamp v. American Family Mut. Ins. Co., 407 S.W.2d 559 (Mo.App.1966), another Springfield Court of Appeals

case, also indicates that the Missouri courts have taken a rather narrow view where an attempt is made to hold an insurance company liable under the omnibus clause. The facts in *Helmkamp* were stronger in support of implied permission than those presented in this record. In speaking to the question whether Patricia, a friend of the named insured's son, had implied permission, the court stated:

"We have been cited cases from sister states with the suggestion those authorities should apply. Generally speaking, such cases to which we are referred fall in two categories. First are cases from states which purportedly have adopted the so-called initial permission rule, i. e., where the named insured grants his permittee broad control over his automobile, he impliedly authorizes his permittee to allow a third person to use it, thus rendering the latter an additional insured. Missouri courts have not as yet, to our knowledge, fired such a broadside into the omnibus clause of an automobile liability insurance policy." *Id.* at 569.

■ Even though we assume that William's permanent and unfettered control of the Chevrolet cast him in the role of the named insured, and assume further that Sandra's driving on the fateful night was within the scope of his permission so that she would have been protected, the record is barren of any evidence to show that Beezley drove with the permission of either William or Sandra and thus was an insured person— unless the emergency doctrine, discussed below, had the effect of extending coverage to Beezley. Under Missouri law, for there to be implied permission for another person to drive the insured automobile, there must be knowledge of such use or "a course of conduct or a practice with the owner's acquiescence." Mazdra v. Selective Ins. Co., *supra*, 398 S.W.2d at 844. See Helmkamp v. American Family Mut. Ins. Co., *supra*. *Compare* the cases finding coverage, Mazdra v. Selective Ins. Co., *supra* (both knowl-

edge and prior course of conduct present); Bourne v. Manley, *supra* (knowledge of prior course of conduct); Haynes v. Linder, 323 S.W.2d 505 (Mo. App.1959) (knowledge and express acquiescence); *with* those denying coverage, St. Paul Ins. Co. v. Carlyle, *supra*; Hanover Ins. Co. v. Abchal, *supra*; Helmkamp v. American Family Mut. Ins. Co., *supra*; Nye v. James, 373 S.W. 2d 655 (Mo.App.1963); M. F. A. Ins. Co. v. Alexander, 361 S.W.2d 171 (Mo.App. 1962); M. F. A. Ins. Co. v. Lawson, 336 S.W.2d 123 (Mo.App.1960); and Varble v. Stanley, 306 S.W.2d 662 (Mo.App. 1957).

■ We rest our conclusion on these factors which demonstrate beyond doubt an absence of knowledge or a course of conduct giving rise to implied permission: (1) Sandra had been specifically directed not to allow any other person to drive the automobile, and she had complied with this admonition; (2) William had not permitted anyone except Sandra to drive the Chevrolet; and (3) Beezley had not driven it on any prior occasion. Missouri courts have been unwilling to find implied permission from the named insured for a third party to drive even in situations where the original permittee *expressly* authorized a third party to drive. See, *e.g.,* Nye v. James, *supra*; M. F. A. Ins. Co. v. Lawson, *supra*. We would not be justified, therefore, in finding such permission in a situation where the original permittee had absolutely no knowledge of a third party driving the insured vehicle.

■ Nor do we find persuasive appellant's argument that because Beezley was driving the automobile for the benefit of William, he was acting pursuant to his implied permission. First of all, it is not certain that the Missouri courts consider the interest of the original permittee as a relevant circumstance in determining the question of implied permission. See St. Paul Ins. Co. v. Carlyle, *supra*, and Helmkamp v. American Family Mut. Ins. Co., *supra*. In any event, the cases from other jurisdictions cited by appellant are not sufficiently

analogous to be helpful. In Allstate Ins. Co. v. Mathis, 232 Ark. 484, 339 S.W.2d 132 (1960) and Third Nat'l Bank v. State Farm Mut. Automobile Ins. Co., 334 S.W.2d 261 (Ky.1960), the original permittee expressly instructed the third party to drive. And in American Automobile Ins. Co. v. Taylor, 52 F.Supp. 601 (N.D.Ill.1943), the driver of the automobile was the insured's son who was operating the vehicle in the presence of his mother when the accident occurred.

Appellant's final argument is that Beezley was impliedly authorized to return the automobile to the Camp apartment because of the "emergency" that had arisen. She contends that both Orlando and William Camp would have preferred that Beezley return the automobile rather than leave it "to the prey of thieves or vandals."

The question of whether an "emergency" can create implied permission of the named insured to drive his insured automobile has not been before the Missouri courts. Indeed it has been considered only by a relatively few courts from other jurisdictions. Annot., 4 A.L.R. 3d 10, 74, 122 (1965); 7 Appleman, Insurance Law and Practice § 4365, note 25, p. 302, and note 35, p. 306 (1962). The briefs of the parties and this court's independent research reveal only three cases where coverage has been found due to an "emergency" situation. All of these cases differ too significantly from the case at bar to be persuasive.

In Aetna Life Ins. Co. v. Chandler, 89 N.H. 95, 193 A. 233 (1937), the original permittee expressly directed the third party to drive into town for medicine. Similarly, in Brooks v. Delta Fire & Cas. Co., 82 So.2d 55 (La.App.1955), the original permittee directed the third party to drive while she remained in the vehicle and tended to a crying child. In Coons v. Massachusetts Bonding & Ins. Co., 12 A.D.2d 701, 207 N.Y.S.2d 819 (1960), aff'd, 9 N.Y.2d 994, 218 N.Y.S. 2d 66, 176 N.E.2d 515 (1961), the named insured stopped his car in a busy street,

got out and began walking away. His brother, a companion in the car, moved the car although he had no license to drive. An accident ensued, and implied permission for the brother to drive was found from the conduct of the owner leaving his vehicle in a busy street.

■ Under the most liberal comparison of the *Coons* case to the factual situation before this court, an emergency existed only until the Chevrolet was removed from the road. Accordingly, Judge Duncan held, "[i]f there was an emergency, it occurred at the time Mrs. Camp became incapacitated from fright (or otherwise) from skidding on the ice. * * * " He further reasoned that, "[i]f there was an emergency created by Mrs. Camp passing out, it was not sufficient apparently to cause the parties to take her home for they continued to drive a considerable time thereafter and out into the country where they were overtaken by the other group." At this point, Sandra was transferred to another car. The only circumstance that could have then constituted an "emergency" was the abandonment of the automobile at the schoolyard. In this regard the district court stated: "We do not believe, as insisted by the plaintiff, that the desirability of getting the Camp car back to Excelsior Springs created such an emergency to bring it within the coverage of the policy."

We conclude that there is nothing in the record or in the Missouri cases which would warrant our disturbing the finding of the district court that there was no implied permission by reason of an emergency which would bring Beezley within the coverage of the omnibus clause. *See* Rosenbloom v. St. Paul Fire & Marine Ins. Co., 214 F.Supp. 301 (S. D.N.Y.1963); Kadrmas v. Mudna, 107 N.W.2d 346 (N.D.1961); Lucas v. United States Fidelity & Guaranty Co., 113 N.J.L. 491, 174 A. 712 (1934); Bauer v. Hardware Mut. Cas. Co., 13 Wis.2d 21, 108 N.W.2d 271 (1961); Prisuda v. General Cas. Co., 272 Wis. 41, 74 N.W. 2d 777 (1956); Adkins v. Inland Mut.

Ins. Co., 124 W.Va. 388, 20 S.E.2d 471, 663 (1942).

We recently decided another close case involving coverage under an omnibus clause. In Gillen v. Globe Indem. Co., 377 F.2d 328 (8th Cir. 1967), we considered whether a third party, under Arkansas law, had the implied permission of the named insured to use the insured automobile. It is appropriate to repeat what we said in that instance:

> ""We deplore the role of having to decide cases that may be precedent in the establishment of purely local law and policy. It would have been preferable for this action to have been brought in the state courts in order that a definitive state ruling might have been obtained. * * * At any rate, the presently undeclared law of Arkansas on this issue might, and should be free to develop in an entirely different manner if and when the Arkansas courts are given the opportunity to rule on these questions." *Id.* at 333.

Although Allstate cannot be faulted for exercising its right to remove the case to the federal court, we cannot escape the conclusion that a beneficial purpose would have been served if the Missouri Supreme Court could have rendered a definitive decision on a question that deeply involves matters of local law and policy. However, our function is not to formulate but to apply Missouri law to the novel situation before us. Our study of the relevant cases leads us to conclude that the Missouri courts have adopted a strict position on the question of implied permission under the omnibus clause. As a consequence we are unable rationally to hold that coverage extended to a person who was driving the automobile without the knowledge or consent of either the named insured or the party who had full dominion and control of the vehicle. We believe Judge Duncan reached a permissible conclusion. Accordingly, the judgment is affirmed.