## MIEDREICH *v.* RANK ET AL.

[No. 5,947. Filed October 16, 1907.]

1. ATTORNEY AND CLIENT.—*Authority.—Presumptions.*—The authority of the plaintiff's attorney to object to a proposed dismissal of her case, at defendant's request, is presumed. p. 396.

2. SAME.—*Authority.—General Retainer.*—An attorney, employed under a general retainer, is the sole manager of his client's cause in court. p. 397.

3. PARTIES.—*Appearance.—Personal.—Attorneys.*—Parties may appear in court personally or by attorneys, but cannot do both. p. 397.

4. ATTORNEY AND CLIENT.—*Compromise.—Representing Opposite Party.*—An attorney, without his client's consent, cannot compromise nor prejudice his client's case, nor can he represent the adverse party. p. 397.

5. DISMISSAL AND NONSUIT.—*Compromise.—Answers of.*—Where a plaintiff's cause of action has been settled during the pendency of the action, and a dismissal thereof is contested, the defendant must plead in bar of the action or its further prosecution; and the court cannot summarily dismiss it, over plaintiff's objection, though she had heretofore, in writing, requested a dismissal. p. 398.

6. ATTORNEY AND CLIENT.—*Compensation.—Liens.*—An attorney may recover compensation for legal services rendered; and in Indiana he may, by statute (§7238 Burns 1901, §5276 R. S. 1881), acquire a lien on his client's judgment. p. 398.

7. SAME.—*Equitable Liens.*—An attorney has an equitable lien on funds secured by him in his client's litigation. p. 398.

8. COMPROMISE AND SETTLEMENT.—*Attorney and Client.—Fraud.*—Parties to an action may ordinarily settle their claims out of court, and without the knowledge of their attorneys; but they cannot execute a valid settlement which constitutes a fraud upon the rights of the attorneys therein. p. 399.

9. COURTS.—*Officers.—Attorneys.—Duty to Protect.*—It is the inherent duty of the courts to protect attorneys practicing before them from fraud and imposition practiced by clients. p. 399.

10. ATTORNEY AND CLIENT.—*Dismissal.—Settlement.—Fraud on Attorney.—Remedy.*—Where the plaintiff and defendant fraudulently settle their action in order to defeat the rights of plaintiff's attorney, he may object to the dismissal of the action, and may prosecute it, in the plaintiff's name, to final judgment for the amount rightfully due to him. *Hanna* v. *Island Coal Co.*, 5 Ind. App. 163, distinguished. p. 400.

11. COMPROMISE AND SETTLEMENT. — *Fraud.* — *Attorneys.* — Settlements made by the parties to an action, in the absence of the interested attorneys, are viewed with suspicion, and will be set aside when there is any appearance of fraud. p. 401.

12. SAME.—*Fraud.*—*Attorney and Client.*—Where a beneficiary sues on a life policy for $2,000, and the defendant falsely represents to her that an immediate settlement will avoid the payment of·$150 of accrued costs, and that the case has been "thrown out of court," a settlement, for $400, made upon faith in such representations constitutes a fraud upon the beneficiary as well as upon the attorney, of whose contract defendant knew. p. 402.

13. SAME.—*Consideration.*—*Adequacy.* — *Insurance.* — *Attorneys.*— Where the beneficiary in a $2,000 life policy surrenders same for a paid-up policy for $592, and such beneficiary afterwards ascertains that the assured was dead at the time of the surrender, and she brings a suit to set aside such surrender and to recover on the original policy, a compromise for $400 rests upon an inadequate consideration and is, of itself, evidence of bad faith, especially as to plaintiff's attorney who had prepared the case for trial, and, to defendant's knowledge, was to be compensated in proportion as he recovered on the policy. p. 402.

14. ATTORNEY AND CLIENT.—*Settlement of Cases.*—*Professional Conduct.*—It is unprofessional for an attorney to settle or knowingly to permit his client to settle the client's case in the absence of adverse counsel. p. 403.

From Superior Court of Vanderburgh County; *John H. Foster*, Judge.

Action by Ada H. Rank against the Illinois Life Insurance Company. From a judgment of dismissal and an order overruling William P. Miedreich's motion for leave to prosecute the action for his benefit, as plaintiff's attorney, he appeals. *Reversed.*

*Louis J. Herman*, for appellant.

*Long & Price*, and *Spencer & Brill*, for appellee company.

ROBY, J.—Ada H. Rank, by William P. Miedreich, her attorney, sued the Illinois Life Insurance Company. Such proceedings were had as resulted in the filing of an amended complaint, to which the defendant on June 6, 1904, filed a demurrer for want of facts. No ruling was made thereon at

the June term of the Superior Court of Vanderburgh County wherein such action was pending, and on September 5 following, being the first judicial day of the September term, the attorneys for the defendant brought into court and filed a paper signed by the plaintiff, directing the dismissal of the action.   Her attorney thereupon objected to the dismissal of said action by the court, and filed a motion, supported by affidavit, for leave to prosecute the suit to final judgment. His objection and motion were overruled.   The defendant's motion to dismiss was sustained, and a judgment rendered for the defendant, from which the attorney for the plaintiff appeals, assigning error upon the action of the court as aforesaid.   The averments of the plaintiff's amended complaint are to the effect that the defendant life insurance company was liable for the payment of a policy of insurance theretofore issued upon the life of her husband, John W. Rank, in which policy the plaintiff was named as beneficiary; that said Rank resided with his family in Evansville, and was in February, 1894, temporarily, at St. Paul, Minnesota; that he went from St. Paul to New York City, and in August, 1894, wrote to the plaintiff that he was suffering from nervous headaches, was on the verge of a nervous collapse, and was desirous of coming home; that she forwarded money to him with which to pay his fare home, and has not had any tidings from him since, notwithstanding diligent inquiry and search upon her part; that she continued to pay the premiums on said policy until February, 1896, at which time, such payments being onerous, she surrendered said policy in consideration of a paid-up policy issued by said company for the sum of $598.   It is averred that said paid-up policy was issued and accepted under a mutual mistake of fact; that both parties believed John W. Rank to be living, when, in fact, he was then dead; that the original $2,000 policy is in the defendant's possession, and for that reason a copy is not filed with the complaint.   Performance of its conditions is

averred, and a decree prayed for the cancelation of the paid-up policy, the reinstatement of the original policy, and for $2,000.

In the affidavit filed by Mr. Miedreich, it is stated that he was employed as an attorney by Mrs. Rank to prosecute her claim against the defendant upon the paid-up policy, and a written contract is set out, by the terms of which she agreed to pay him for his services therein an amount equal to twenty-five per cent of the amount recovered by judgment or compromise; that he investigated the legal propositions and facts involved, and gathered evidence by which to establish the death of John H. Rank, and came to the conclusion that the defendant was liable for the full amount of the original policy, whereupon a second agreement was entered into between him and Mrs. Rank, by which his fee was fixed at an amount equal to thirty-three and one-third per cent of the recovery, as aforesaid; that he thereupon instituted this action. He further sets out that the signature of his client to the written dismissal produced by defendant was secured by means of misrepresentations made to her by it; that it represented to her, she at the time residing at Nashville, Tennessee, that the case had been thrown out of court; that unless she settled she would have to pay the accrued costs, amounting then to $150, and which would amount to $175 by September 5, when in fact all the costs in the case amounted only to $12; that the defendant had notice of the contracts between him and Mrs. Rank; that the value of his service is $666, and that he has received no compensation whatever. The facts set up in the affidavit are not stated with the technical accuracy usual to a· pleading charging fraud, but they are sufficient to make a *prima facie* case of fraud upon the attorney by the parties to the action. The paper purporting to evidence a settlement of the case bore the

1. signature of the plaintiff, and was filed by the attorneys for the defendant. The attorney for the plaintiff was in court objecting to the proposed dismissal. His au-

thority is not only presumed (*Indiana, etc., R. Co.* v. *Maddy* [1885], 103 Ind. 200), but conclusively established by written contracts of employment. No other attorney appeared for the plaintiff, and no suggestion that Mr. Miedreich's employment had terminated was made. "In the general management of a suit, the attorney has a very extensive authority. * * * The conduct of a suit, except in a matter arising in the argument or hearing before the court, is exclusively under the control of the attorney of record in it." Weeks, Attorneys at Law (2d ed., by Boone), §220.

The authority which an attorney exercises under a general retainer is not the subject of uncertainty. "He is more than the mere agent as to the business committed to his care, he is the sole manager." *Curtis* v. *Richards* (1895), 4 Idaho 434, 40 Pac. 57.

"However, it may be said, in a general way, that a party to an action may appear in his own proper person, or by attorney, but he cannot do both. If he appears by attorney, he should be heard through him. It is necessary to the decorum of the court and the due and orderly conduct of the cause that the attorney should have the control and management of the action. Moreover the client is thereby protected from the intrigues of his adversary. All the proceedings in court to enforce the remedy, to bring the demand, cause of action, or subject-matter of the suit to trial, judgment and execution, are, ordinarily, within the exclusive control of the attorney; and, on the other hand, the attorney cannot compromise, settle, surrender, or impair the cause of action, or the subject-matter of litigation without the consent of his client, it being within the exclusive control of the client." Note to *Cameron* v. *Boeger* (1902), 93 Am. St. 165, 170. And see, 3 Am. and Eng. Ency. Law (2d ed.) 357, note; *McConnell* v. *Brown* (1872), 40 Ind. 384. The attorney for the defendant cannot be permitted to represent the opposite party. *Bartholomew* v. *Union Trust Co.* (1905), 36 Ind.

App. 328. The plaintiff was present in the court by her attorney. He may have had "special instructions from his client" (*McConnell* v. *Brown, supra*), and the defendant could not compel a dismissal of the cause. If it had made a settlement "it would have to plead in bar of the action or its further prosecution." *McConnell* v. *Brown, supra.* It follows that the court erred in dismissing the action. There is no appeal, however, by the plaintiff, and the disposition of the appeal depends upon whether, upon the showing made, the action of the court in refusing to permit the prosecution of the action by the attorney was correct.

After several centuries of effort, the courts have come to the conclusion that an attorney may recover pay for services rendered. Interesting historical reviews of the subject are contained in *McDonald* v. *Napier* (1853), 14 Ga. 89, 104, and in *Fischer-Hansen* v. *Brooklyn Heights R. Co.* (1903), 173 N. Y. 492, 495, 66 N. E. 395. In Indiana he may, by virtue of the statute, acquire a lien upon the judgment which he obtains for his client. §7238 Burns 1901, §5276 R. S. 1881.

It has been decided that such lien is not his exclusive remedy, but that equity will, independent of the statute, create and enforce a lien in his favor. "The reason for this rule is that the services of the solicitor have, in a certain sense, created the fund, and he ought in good conscience to be protected." *Puett* v. *Beard* (1882), 86 Ind. 172, 44 Am. Rep. 280. See, also, *Justice* v. *Justice* (1888), 115 Ind. 201. A remarkably clear discussion of the subject is contained in the opinion of the court, written by Hackney, J., in *Koons* v. *Beach* (1897), 147 Ind. 137.

In New York, and other states, statutes have been enacted under which the attorney may acquire a lien upon his client's cause of action, but there is no such statute in this State, and it has been held that ordinarily an attorney acquires no lien for fees until after judgment. *Hanna* v. *Island Coal Co.* (1892), 5 Ind. App. 163, 51 Am. St. 246, 262.

It is not necessary to determine whether the contract between Mrs. Rank and appellant amounted to an equitable assignment in the latter's favor.

Generally speaking, the plaintiff has full power to compromise and settle his claim out of court and without the knowledge or consent of his attorney. *Hanna* v. *Island Coal Co., supra; Young* v. *Dearborn* (1853), 27 N. H. 324; *Jackson* v. *Stearns* (1906), 48 Ore. 25, 84 Pac. 798, 5 L. R. A. (N. S.) 390. "The right of the parties thus to settle is absolute and the settlement determines the cause of action and liquidates the claim. * * * Of course we do not refer to dishonest settlements made to cheat attorneys, which the courts will brush aside with a strong hand." *Fischer-Hansen* v. *Brooklyn Heights R. Co., supra.* The law favors compromises, and the settlement of litigation is encouraged, but such favor does not extend to transactions which are flavored with fraud.

The effect of the authorities is accurately summarized in a monographic note to *Cameron* v. *Boeger* (1902), 93 Am. St. 165, 173, and cases cited, as follows:

"While honest settlements between the parties to a litigation, made without any intention of taking advantage of the attorneys are commendable and to be encouraged, collusive and fraudulent settlements made for the purpose of defrauding the attorneys are, of course, reprehensible. If such are attempted, the court may interfere to protect the attorney. Its power to do so is inherent, and is founded on its right to protect its own officers against collusion and fraud practiced by the parties to the cause."

It is well known, although seldom stated, that the usefulness of the American judiciary depends upon the members of its bar. The judge can decide only questions presented to him for decision, and, in the absence of an independent bar, containing right-minded, fearless lawyers, the judge and the court would be.of little use. The duty of courts to protect officers who are so essential to them

and from whom the highest fidelity is exacted, from fraud and imposition practiced or attempted by litigants is perfectly clear. It is an inherent obligation, and inherent power in the court to discharge it has always been recognized. *Jackson* v. *Stearns, supra; Rasquin* v. *Knickerbocker Stage Co.* (1861), 21 How. Prac. 293; *Potter* v *Ajax Mining Co.* (1899), 19 Utah 421, 431 57 Pac. 270; *Heister* v. *Mount* (1840), 17 N. J. L. 438; *Fischer-Hansen* v. *Brooklyn Heights R. Co., supra; National Exhibition Co.* v. *Crane* (1901), 167 N. Y. 505, 508, 60 N. E. 768; *Talcott* v. *Bronson* (1834), 4 Paige *501; *Reid* v. *Jordan* (1876), 56 Ga. 282; *Jones* v. *Morgan* (1869), 39 Ga. 310, 99 Am. Dec. 458; monographic note to *Hanna* v. *Island Coal Co.* (1892), 51 Am. St. 246, 263, 276.

"Where a settlement is privately effected between the parties, with the design of preventing the attorney from obtaining his costs, the court will, notwithstanding the settlement, allow the attorney to go on and collect the costs in the action, that he may secure himself." *Rasquin* v. *Knickerbocker Stage Co., supra.* The procedure in such case is as follows: "Though a party may, without the consent of his attorney, make a *bona fide* adjustment with the adverse party and dismiss an action or a suit before a judgment or a decree has been rendered therein, if it appears, however, that such settlement was collusive and consummated pursuant to the intent of both parties to defraud the attorney, the court in which the action or suit was pending may interfere to protect him, as one of its officers, by setting aside the order of dismissal, and permitting him to proceed in the cause in the name of his client as plaintiff to final determination to ascertain what sum of money or interest in the subject-matter, if any, is due him for his services when fully performed." *Jackson* v. *Stearns, supra; Potter* v. *Ajax Mining Co., supra; Young* v. *Dearborn, supra; Randall* v. *Van Wagenen* (1889), 115 N. Y. 527, 531, 22 N. E. 361, 12 Am. St. 828; *Weeks* v. *Wayne Circuit Judges* (1889), 73

Mich. 256, 41 N. W. 269; *Howard* v. *Town of Osceola* (1868), 22 Wis. 453; *Voell* v. *Kelly* (1885), 64 Wis. 504, 25 N. W. 536; *Heister* v. *Mount, supra.*

The procedure has been designated as "clumsy." "It was a device of the courts, not of the legislature, and sprang from the necessity of providing some remedy against fraudulent settlements." *Fischer-Hansen* v. *Brooklyn Heights R. Co., supra,* at page 501. The necessity is no less at this time in Indiana than it was in England years ago, when the procedure was first followed, and it furnishes a remedy by which the courts may compel the litigants to treat the lawyer with some measure of the honesty which he is bound to exercise in his dealings with them. *Hanna* v. *Island Coal Co., supra,* was an independent action brought by an attorney against the opposite party in the litigation, theretofore disposed of by settlement. The case might have been placed upon the ground that the remedy of the attorney was by motion. The opinion in said case shows that the principles heretofore stated were not considered, and were indeed not within the issue. The language used by the learned writer of that opinion is therefore limited to the case then before the court. The procedure adopted by the appellant in the case at bar was correct, and, if the facts before the court were sufficient to make a *prima facie* case of fraud against him, the judgment appealed from will have to be reversed. The affidavit was presented to the court as one step in a pending cause, the details of which that court already knew.

The settlement was made by the parties in the absence, and without the knowledge of the plaintiff's attorney. While it was competent for the parties to settle their controversy in that manner, yet a settlement thus made is viewed with suspicion (*Falconio* v. *Larsen* [1897], 31 Ore. 137, 48 Pac. 703, 37 L. R. A. 254), and will be closely scrutinized and set aside when there is any appearance of fraud. *Voell* v. *Kelly, supra.*

When it is remembered that Mrs. Rank was in another state and that the necessity for an immediate settlement to avoid the payment of $150 costs which she was falsely told had already accrued and which she was falsely told would amount to $175 by September 5, and when it is remembered, in addition, that the case she was settling was one which "had been thrown out of court," it would not be severe to say that there was some appearance of fraud, primarily upon the plaintiff, but necessarily including the attorney of whose relation and contract both parties knew, and to whom his client pays nothing.

The amount of the paid-up policy which it is alleged was held by Mrs. Rank was $592. In any view of the facts she was entitled to that sum and costs, if she was entitled to anything. The rights of the parties would be practically determined by the fact of the husband's death. Whether he was dead or alive was a question which a court ought to be able to determine in accord with the evidence adduced upon the subject. Mrs. Rank was paid $400. If the man was dead, the consideration was inadequate, and an inadequate consideration affords evidence of bad faith. *Young* v. *Dearborn, supra*. It is stated in the affidavit that the attorney gathered evidence to prove that the man was dead at the time the original policy was taken up, and the circumstances that the defendant made the settlement it did with a widow whose financial ability made it onerous for her to pay premiums upon a $2,000 policy of life insurance, and that it made such settlement in a distant state, and out of the presence of her attorney, assisted thereto by misrepresentations which, had they been true, would have rendered the payment made to her a mere gratuity, are inconsistent with the necessary good faith and fair dealing. Without an attorney to present and a court to enforce her claim, Mrs. Rank was helpless. She agreed to compensate the attorney in proportion as she recovered on the policy. He evidently discharged his duty, and when through his efforts his client

MAY TERM, 1907.    403

Indianapolis Traction, etc., Co. *v.* Miller—40 Ind. App. 403.

was placed upon even terms with the insurance company, and their respective rights were about to be adjudicated, the transaction in question took place. There are litigants who do not hesitate, under such circumstances, to "beat the lawyer out of his fee." This is not strange in view of the fact that he furnishes the only check upon their rapacity, but no member of the bar who wishes to be regarded as reputable will connive or knowingly permit such practice by his clients—practice, fraudulent in itself and against public policy, in that its result is to prevent the unfortunate and the poor from obtaining that redress which it is the high concern of the law to secure to them.

The judgment is reversed, and the cause remanded for further proceedings consistent herewith.