## GERDINK ET AL. *v.* MEGINNIS ET AL.

[No. 10,266. Filed March 16, 1920.]

1. ASSIGNMENTS.—*Action for Enticement of Wife.—Right to Assign.*—A cause of action by the husband for the enticement of his wife is not assignable either at common law or under the statute. p. 43.

2. CHAMPERTY AND MAINTENANCE.—*Action for Enticement of Wife.—Assignment.—Validity.*—An attempt by the husband to assign by contract his cause of action for the enticement of his wife or any interest in such cause of action prior to the rendition of judgment would be champertous and void. p. 43.

3. ATTORNEY AND CLIENT.—*Action for Enticement of Wife.—Settlement by Husband.—Prosecution by Attorney to Secure Fees.*—Where a husband contracted with attorneys to prosecute an action for the enticement of his wife and agreed to pay them as compensation a sum equal to fifty per cent. of the amount recovered, such attorneys, upon a reconciliation of husband and wife, will not be permitted to prosecute the action to final judgment, in disregard of the husband's wishes, for the purpose of securing their fees on the theory that under their contract they had an interest in the cause of action.  p. 44.

From Vigo Superior Court; *William T. Gleason,* Judge.

Action by Charles A. Stevens against Herbert E. Meginnis. From a judgment of dismissal, John W. Gerdink and another, plaintiff's attorneys, having taken exceptions to the court's refusal to permit them to prosecute the action for the purpose of securing attorney's fees, appeal. *Affirmed.*

*John W. Gerdink, Herbert Gerdink, Josiah T. Walker* and *Felix Blankenbaker,* for appellants.

*Davis, Moore, Cooper, Royse & Bogart,* for appellees.

ENLOE, J.—This action was begun by the appellee Charles A. Stevens, by his attorneys, appellants Gerdink and Gerdink, by filing a complaint in two paragraphs in said superior court against appellee Herbert E. Meginnis. The first paragraph alleged that said appellee defendant wrongfully persuaded and enticed the wife of said plaintiff to leave her home, and to go and take up her residence with said defendant; that said defendant had been guilty of adultery with the plaintiff's said wife; that plaintiff had thereby lost the society, companionship, and affections of his wife, and had been greatly humiliated and distressed.

The averments of the second paragraph are similar to those of the first, except that there is no averment concerning adultery. There was a prayer for damages in the sum of $15,000.

This complaint was filed August 21, 1917, and was answered by defendant by general denial, the same being filed September 17, 1917. On September 18, 1917, the court made an order against said defendant concerning his appearance at a time and place fixed by the court in said order, to answer under oath concerning the matter alleged in said pleadings.

On September 24, 1917, said defendant filed in said court his verified motion to set aside the order for his aforesaid examination under oath, and that said action abate and be dismissed, for the reasons in the motion stated, one of the reasons therein stated being "that the plaintiff has requested his attorneys of record to dismiss said cause and said attorneys have refused and still refuse." This motion was verified by the affidavit of said plaintiff, Stevens, said affidavit being as follows:

"Charles A. Stevens, being duly sworn upon his oath says, that the matters and things set forth in the motion and plea in abatement herein, are true in substance and in fact.

"Affiant further says that this affidavit is made without reward or promise of reward from any one, and that the reconciliation between him and his wife was brought about without inducement or promise of inducement from any one; that investigation has convinced him that the charges set out in his complaint against the defendant herein are without foundation in fact, and that he is very desirous that the case be dismissed and the matter finally terminated."

The appellants, acting ostensibly for said Stevens, then moved to strike said motion from the files, which motion was overruled, and they then filed a demurrer to said motion. Pending the ruling of the court on said demurrer, the defendant, Meginnis, filed a motion to strike said demurrer from the files, stating in said motion seven separate and several reasons why the same should be sustained.

Pending a ruling of the court on the last motion the appellants filed their verified petition, asking leave to prosecute the above suit in the name of said plaintiff and against said defendant for the purpose of protecting their interest in said matter, as attorneys for said plaintiff, as to the matter of securing to them their attorney's fees, and alleging that they had an agreement with said Stevens by which he was to pay them for their said services an amount equal to fifty per cent. of any amount recovered as a result of said suit, for the services of appellants as attorneys therein; that they had done a great deal of labor on said case, investigating the facts and preparing for trial; that said plaintiff was wholly insolvent, and that they had received no compensation whatever for their services; that the plaintiff had wrongfully and fraudulently settled his said cause of action, etc.

The court sustained the motion of defendant, Meginnis, to strike said demurrer to said motion from the files; the court also sustained the motion of defendant, Meginnis, to dismiss said cause. After the court had announced that it would sustain said motion to dismiss, and before such judgment was entered, the appellants requested leave to file their answer to said motion to dismiss, which leave was by the court refused. The court also refused to permit the appellants to prosecute said suit in the name of the plaintiff to final judgment so that they might secure the fees as attorneys as in their aforesaid motion they had asked.

Judgment was finally rendered, dismissing said cause at the cost of the said plaintiff. Exceptions were duly taken by the appellants to the several rulings aforesaid, and they have prosecuted this appeal from said judgment and ask a reversal thereof on account of alleged errors arising under said several rulings.

The only one of the alleged errors which it will be

necessary for us to notice is that relating to the action of the court in refusing permission to the appellants to prosecute this cause to a final judgment in the name of said plaintiff as set forth in said motion. If the court did not err in this, no other of the alleged errors are available to appellants, and they are the only ones complaining of said alleged errors.

The appellants could acquire no interest in said plaintiff's cause of action *by assignment* for the reason that said cause of action was *personal, did not survive,* and hence was not assignable either at common law or under the statute. 2 R. C. L. 610; 5 C. J. 886. Any attempt by the plaintiff, appellee Stevens, to assign by contract his alleged cause of action, or any interest therein, prior to the same having been reduced to a judgment, would have been champertous and void. *West* v. *Raymond* (1863), 21 Ind. 305; *Scobey* v. *Ross* (1859), 13 Ind. 117; *Lafferty* v. *Jelley* (1864), 22 Ind. 471; *Mount* v. *Board, etc.* (1907), 168 Ind. 661, 80 N. E. 629, 14 L. R. A. (N. S.) 483. In *Arden* v. *Patterson* (1821), 5 Johns Ch. (N. Y.) 44, it was said: "The purchase of a lawsuit by an attorney, in a case like this, is champerty in its most odious form; and it ought equally to be condemned on principles of public policy. * * * The precedent would tend to corrupt the profession, and produce lasting mischief to the community."

The case of *Pulver* v. *Harris* (1873), 52 N. Y. 73, was very similar to the one at bar. In that case plaintiff had recovered a judgment in the lower court and thereafter assigned the same to his attorney as security for his fees, etc. On appeal the cause was reversed and remanded for a new trial. Pending such trial, the plaintiff settled with the defendant, who had notice of the said assignment, and of the insolvency of the plaintiff. The attorney for the plaintiff insisted that he had a

right to prosecute the suit to a final judgment, as a matter of protecting himself for his fee, just as the appellants are contending in this case. In passing upon the matter the court said: "But it is entirely clear that he has no such right, for the reason that the cause of action did not belong to him and he has no lien upon it. * * * As to him it was a cause of action belonging to the plaintiff, which he could not transfer, and which must remain subject to his control until merged in a judgment, or, at least, a verdict." Under all the authorities it is settled beyond question that the appellants could acquire no interest in the plaintiff's cause of action herein by any assignment from him.

The appellants rely strongly upon the case of *Miedreich* v. *Rank* (1907), 40 Ind. App. 393, 82 N. E. 117. They also say in argument: "The procedure of the appellees in this matter is certainly contrary to public policy and calculated to thwart justice, so why should it not receive judicial condemnation rather than approval? Such conduct is well calculated to lower the standard of morals and reverse the boasted trend of civilization."

It will be noted that in the Miedreich case, *supra,* the cause of action was based upon a paid-up policy of insurance in the sum of $598. The right of action upon this policy was assignable, and hence no question of public policy, so far as such assignment could have been in question, was involved. In the instant case, matters are far different. The appellants ask in effect the court to do that which the policy of the law forbids, viz., to declare that by reason of the contract they had with said plaintiff, and by the force and effect thereof, plaintiff's said cause of action was assigned to them, at least to the extent that they had the right to control the litigation, and settlement thereof, and the right to prosecute the same to final judgment,

in disregard of the wishes of said plaintiff, to the end that they might thereby secure their fee as attorneys in the case. This we cannot do. The firm foundation of any nation rests in the homes of the people thereof. Destroy the home and you at once destroy those feelings in the breast of the individual which are the fountain from which patriotism, his love of country, flows. The man who has no love for home, who has no home, can have no patriotism. · Without this, the ties which bind the individual to his country at once become "ropes of water and chains of mist."

The record before us shows "that investigation had convinced plaintiff that the charges set out in his complaint against the defendant, were without foundation in fact;" that the plaintiff and his wife "had become reconciled" and were again living happily together as husband and wife. Upon this showing we are led to inquire, Would the ties which now hold this family be in any way strengthened, and their relation made more agreeable to the parties interested, by having the cause continued on the docket of the court for trial and the parties compelled to appear and testify? Would the love and confidence of the husband for and in his wife be strengthened and increased by having the matter of any suspicious, or even positively bad, conduct aired in ·court, possibly before a horde of persons to whom every bit of scandal is a morsel sweet to their tongues? These questions need no answer. Courts should be, and are, ever ready to lend their strong arm to protect the home. They will not lend their aid towards destroying it.

There is no error in this record of which the appellants can complain, and the judgment is therefore affirmed.