Michael E. KOVAL and Jean M. Koval, Plaintiffs,

v.

SIMON–TELELECT, INC., et al., Defendants.

No. 3:92–CV–505RM.

United States District Court, N.D. Indiana, South Bend Division.

Aug. 14, 1997.

---

David C. Jensen, John M. McCrum, Paul A. Rake, Eichhorn Eichhorn and Link, Hammond, IN, for Michael E. Koval and Jean M. Koval.

Mark D. Boveri, Barnes and Thornburg, South Bend, IN, Andrew J. Detherage, Mi-

chael R. Conner, Barnes and Thornburg, Indianapolis, IN, Larry Klayman, Paul J. Orfanedes, Klayman and Associates, Washington, DC, for Simon–Telelect, Inc., Simon United States Holdings, Inc.

Robert J. Konopa, Konopa and Murphy PC, South Bend, IN, for JGB Industries, Inc., Baker Equipment Engineering Co., Baker Equipment Leasing Co.

Philip E. Kalamaros, Edward N. Kalamaros & Associates, South Bend, IN, for Henkels & McCoy/Liberty Mutual Ins. Co.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Michael and Jean Koval filed a motion to enforce a settlement agreement reached among various parties in and related to this case during a September 18, 1996 mediation. The court held a hearing on the Kovals' motion on November 25, 1996, heard oral argument from the parties, and set a briefing schedule that included the filing of stipulated facts. The court then issued a proposed order for comment, and comments and objections were filed.

The court adopts the parties' stipulated facts, filed on December 3. Michael Koval was injured on August 13, 1991 while using an aerial lift device made by Simon–Telelect, Inc. and distributed by the Baker defendants. At the time of his injuries, Mr. Koval was acting in the course and scope of his employment with Henkels & McCoy, Inc., an electrical contracting firm that is not a party to this lawsuit, but which has consented to the court's resolution of the settlement issue. Henkels & McCoy was partially self-insured; Liberty Mutual Insurance Company was its worker's compensation carrier. Mr. Koval's ensuing medical bills were paid through Liberty Mutual, as were temporary total disability benefits. The medical and disability payments totaled $299,609.06; Liberty Mutual holds a worker's compensation lien for $49,609.06, while Henkels & McCoy holds a worker's compensation lien for $250,000.00.

Mr. Koval filed a worker's compensation claim against Henkels & McCoy on July 27, 1992. Liberty Mutual retained the law firm of Edward N. Kalamaros & Associates to defend the workers' compensation claim; the Kalamaros firm appeared for Henkels & McCoy before the Indiana Worker's Compensation Board on September 22, 1992. Mr. Koval filed this product liability suit against Simon–Telelect and the Baker defendants (and eventually, United States Holdings, Inc.) on August 4, 1992. The Baker defendants filed bankruptcy in the Eastern Division of Virginia on September 1, 1995, and these proceedings were stayed.

The Kovals and the Simon defendants reached a tentative settlement in April 1996, under which the Simon defendants would pay $250,000.00. The agreement was contingent on the Baker defendants' dismissal of an indemnity cross-claim against Simon–Telelect. The Kovals' counsel discussed the possibility of mediation with the Baker defendants. In June 1996, counsel for the Kovals (John McCrum), the Baker defendants (Robert Konopa) and Liberty Mutual and Henkels & McCoy (Joseph Forte of the Kalamaros firm) agreed to engage in mediation with attorney Ronald Kuker. The mediation was set for September 18. On June 12, Mr. Kuker sent a letter to counsel that included a form entitled "Terms of Mediation," which included the following:

7. The following persons shall be present at the mediation unless otherwise agreed by the parties and the mediator: (a) all claimants; (b) all defendants, *if* there is reason to believe that the defendants may be exposed to personal liability; (c) the attorneys for the parties; (d) the representatives of the parties' insurers, such representatives having full settlement authority; and (e) any other persons deemed necessary by the parties to reach full settlement of the dispute.

8. If the parties come to any agreement, the mediator will put such agreement in writing. No agreement will be binding on any party as to any subject, unless in writing, and signed by those to be bound by the agreement. Any agreement signed by the parties constitutes evidence that may be introduced in litigation. If any party should attempt to break or question any agreement, or seeks any other remedy regarding the mediation, then such party shall be responsible for the mediator's fees plus attorney fees, court

costs and other costs and expenses incurred by the mediator as a result of such proceedings.

On June 28, Mr. Kuker wrote to Mr. Forte of the Kalamaros firm recommending that someone from the Kalamaros firm and a representative of the lienholder attend the mediation. Mr. Kuker added, "As I understand it, Liberty Mutual is the lienholder."

On September 13, Liberty Mutual advised counsel that Carolyn Young would be their representative at the mediation, and that she would have final compromise authority on the lien. This communication led counsel for Liberty Mutual and Henkels & McCoy to believe that Ms. Young had full compromise authority for both lienholders. Ms. Young so believed, as well. On September 17, the bankruptcy court entered an order allowing the mediation.

The mediation conference was held on September 18. Mr. and Mrs. Koval attended with their attorney, Mr. McCrum; the Baker defendants were represented by their representative, Ingrid Halvorsen, and their attorney, Mr. Konopa; Ms. Young and attorney Eric Ciesielski represented Liberty Mutual and Henkels & McCoy. Neither Mr. Ciesielski nor Ms. Young indicated that their authority to settle the worker's compensation lien was restricted or subject to Henkels & McCoy's approval, but the agreement between Liberty Mutual and Henkels & McCoy gave Liberty Mutual no authority to compromise the liens without Henkels & McCoy's prior approval. At the close of the mediation conference, Ms. Young stated that the worker's compensation liens would be compromised for the payment of $25,000.00 by the Kovals to Liberty Mutual. An agreement was reached under which the worker's compensation liens would be compromised for $25,000.00; the Baker defendants would pay the Kovals $250,000.00 and to dismiss their cross-claim against Simon–Telelect; the Simon defendants would pay the Kovals $250,-000.00; the Kovals would dismiss their claims against the defendants in this lawsuit and Henkels & McCoy.

On September 26, Mr. Kuker reported to the court that a settlement had been reached, with stipulations and dismissals being exchanged. On September 27, the Kovals' counsel told Liberty Mutual's counsel that a release and waiver for the compromise of the worker's compensation lien was being sent. Liberty Mutual's counsel received those papers on October 4 and forwarded them to Liberty Mutual on October 9. At about the same time, counsel for the Simon defendants began circulating a global release for signatures of all interested parties and claimants. Counsel for the Baker defendants filed a motion in the bankruptcy court on October 22 for approval of the proposed settlement. The bankruptcy court conducted a hearing on that motion on November 12 and entered an order approving the settlement the following day.

Meanwhile, on October 29, Liberty Mutual had informed its attorney that it needed Henkels & McCoy's approval to compromise the worker's compensation claim. On November 13, the day the bankruptcy court approved the proposed settlement, the Kovals' counsel asked Liberty Mutual's counsel about the status of the release, and was informed that Liberty Mutual was awaiting authority from Henkels & McCoy to compromise the claim. On November 19, Henkels & McCoy told its attorney that it was unaware of the September 18 mediation, had not authorized that day's compromise of its claim, and would not authorize it. Counsel for Liberty Mutual relayed that message to the Kovals' counsel the next day, and also made an offer to the mediator, Mr. Kuker, to pay all parties' mediation costs and reasonable attorney fees, and to participate in a second mediation.

■■■ "A settlement agreement is merely a contract between the parties to the litigation," and the parties' dispute regarding the settlement agreement at issue is therefore governed by Indiana contract law. *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir.1996). Similarly, Indiana agency law governs the authority of the mediation participants. Under Indiana agency and contract law, a principal will be bound by a contract its agent enters into on its behalf only if the agent had actual or apparent authority, or if the principal subsequently ratifies the agreement. *Id.* Actual authority exists where the principal has authorized the agent to enter into such a contract on its behalf. *Carr v. Runyan*, 89

F.3d at 331. The authorization may be explicit, given orally or in writing, or implicit, given by actions by the principal that would lead a reasonable agent to believe he possessed such authority. *Id.*

The court agrees with Henkels & McCoy that neither Liberty Mutual nor Ms. Young had actual authority to bind Henkels & McCoy; Henkels & McCoy held a lien and invested Liberty Mutual with no authority to compromise it. The court also agrees that Henkels & McCoy did nothing to manifest to third parties, such as the Kovals, that Liberty Mutual had the authority to compromise its lien; accordingly, Liberty Mutual had no apparent authority to do so. Apparent authority exists when a principal holds a third party out as its agent; such a principal is liable for the agent's negligent acts. *Sword v. NKC Hospitals, Inc.*, 661 N.E.2d 10, 12–13 (Ind.Ct.App.1996), *trans. granted,* Oct. 7, 1996; *see also Carr v. Runyan,* 89 F.3d at 33 1–332. Apparent agency arises, if at all, "by a manifestation of the principal," which "instill[s in a third party] a reasonable belief that another individual is an agent of the principal." *Sword v. NKC Hospitals,* 661 N.E.2d at 13 (*quoting Hope Lutheran Church v. Chellew,* 460 N.E.2d 1244, 1248 (Ind.Ct.App. 1984)). "[T]here must be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party." *Id.* A communication of authority by the agent (or, inferentially, an agent's failure to disclaim authority) is insufficient to create an apparent agency relationship. *Jarvis Drilling, Inc. v. Midwest Oil Producing Co.,* 626 N.E.2d 821, 826 (Ind. Ct.App.1993) (*citing Pepkowski v. Life of Indiana Insurance Co.,* 535 N.E.2d 1164, 1166–1167 (Ind.1989)). Henkels & McCoy did nothing to lead others to believe it had authorized Liberty Mutual to compromise its lien, so Liberty Mutual had no apparent authority to do so.

All Henkels & McCoy did was to enter into a service agreement with Liberty Mutual regarding the handling of the Koval lien; Liberty Mutual, in turn, retained the Kalamaros firm to handle the liens. Under the circumstances presented here, however, that may have been enough to manifest that Mr. Ciesielski attended the mediation session with authority to settle Henkels & McCoy's claims. Indiana law views an attorney as a powerful agent. An attorney has apparent authority to dismiss a case, to allow judgment against the client, and to do all things ordinarily done with respect to the litigation for which the attorney was hired.

At least until September 1996, the law of Indiana with respect to the authority a party grants its attorney through the retention agreement remained as set forth years ago; with the probable exception of the need to modify pronouns to reflect today's profession, that statement of Indiana law remained unchanged by later decisions:

> The attorney for the plaintiff was in court, objecting to the proposed dismissal. His authority is not only presumed, but conclusively established by written contracts of employment.... "In the general management of a suit the attorney has a very extensive authority. * * * The conduct of a suit except in a matter arising in the argument or hearing before the court is exclusively under the control of the attorney of record in it." The authority which an attorney exercises under a general retainer is not the subject of uncertainty. "He is more than the mere agent as to the business committed to his care. He is the sole manager."

*Miedreich v. Rank,* 40 Ind.App. 393, 82 N.E. 117, 118 (1907) (citations omitted)[1]; *accord, Thompson v. Pershing,* 86 Ind. 303 (1882) ("The allegation in the complaint, that the attorney of the appellant had not authority to make the agreement upon which the judgment was rendered in the original action, must be understood to mean that the appellants had not, in fact, authorized him to make

---

1. The court offers *Miedreich* simply as a statement of the rule of law that appears to have governed most Indiana decisions. The court recognizes, as Henkels & McCoy and Liberty Mutual point out, that the court also wrote, "the attorney cannot compromise, settle, or impair the cause of action, or the subject matter of the litigation

without the consent of the client; it being within the exclusive control of the client." 82 N.E. at 118. That language was dictum under the case's unusual facts, and the language quoted in the main body of this opinion has been cited far more frequently than the language cited in this footnote.

the agreement. But, by employing him to appear for them in the action as their attorney, they did impliedly authorize him to make such agreement. An attorney may, without express authority, bind his client by agreement that judgment may be taken against him, and that, too, though the attorney know that his client has a good defence to the action. If he acts contrary to the express directions of his client, or to his injury, the client must look to the attorney for redress."). At least until September 1996, these principles continued to control Indiana cases. *See, e.g., Mirka v. Fairfield of America, Inc.,* 627 N.E.2d 449, 450 n. 1 (Ind.Ct.App.1994) ("In the absence of fraud by the attorney, the client is bound by the actions of his attorney, even though the attorney is guilty of gross negligence."); *Farm Credit Services v. Estate of Decker,* 624 N.E.2d 491, 495 (Ind.Ct.App.1993) ("the general and long standing rule in this jurisdiction is that absent fraud or collusion between the attorney and the opposing side, acts or omissions of the attorney are attributable to the client.").

 Several Indiana cases have held that an attorney has the apparent authority to settle a claim without the client's consent.[2] *Ferrara v. Genduso,* 214 Ind. 99, 14 N.E.2d 580, 581 (1938) (defendants retained counsel to defend them in foreclosure suit, but did not expressly authorize attorneys to settle case; attorneys nonetheless agreed with opposing counsel to entry of agreed judgment, and did not appear for trial; plaintiffs' efforts to set aside judgment rejected); *Guydon v. Taylor,* 115 Ind.App. 685, 60 N.E.2d 750, 751 (1945) ("This attorney was clothed, under the law, with ample authority to bind appellant by agreeing to the rendition of the judgment set forth in the transcript filed by

the Justice of Peace."); *Evansville Improvement Co. of Vanderburgh County v. Gardner,* 75 Ind.App. 401, 128 N.E. 471 (1920) ("In this case appellant had joined in the execution of the mortgage for the payment of which the real estate was ordered sold, under the order of the court. When the assignment was made she employed an attorney who represented her throughout the assignment proceedings, being present and joining in or acquiescing in each step taken, pertaining to the sale of the real estate involved. That she was bound by his acts has been repeatedly decided."); *accord, International Vacuum, Inc. v. Owens,* 439 N.E.2d 188, 190 (1982) (no abuse of discretion in refusing to vacate default judgment when court's notices to defendant's attorney were returned undeliverable, and attorney failed to keep himself apprised of court proceedings); *see also Devenbaugh v. Nifer,* 3 Ind.App. 379, 29 N.E. 923, 924 (1892) (defendant awaited word from attorney as to when trial was to be held; a week before trial, according to client and attorney, attorney dispatched deputy sheriff to client's house with blank subpoenas for client's witnesses, with instructions to complete forms for deputy to deliver, but deputy was too drunk to reach client's house, so client remained ignorant of trial date; client failed to appear for trial, and attorney assumed client was abandoning defense of case, and consented to entry of judgment in full amount of claim; appellate court upheld refusal to set judgment aside: "His employment in the cause generally gives such attorney the power to agree to an entry of judgment, and, if he violates his instructions, the client must look for redress to the attorney."); *Biddle v. Pierce,* 13 Ind.App. 239, 41 N.E. 475, 477 (1895). The attorney also has the right to dismiss the claim on which the attorney was

---

2. Attorneys also may bind the client in less dispositive ways. For example, an attorney may make admissions of fact giving rise to personal jurisdiction, *Mid–States Aircraft Engines, Inc. v. Mize Co.,* 467 N.E.2d 1242, 1248 (Ind.Ct.App. 1984) ("Attorneys are agents of their clients with respect to specific litigation."), and may stipulate the client's paternity. *Bramblett v. Lee,* 162 Ind. App. 654, 320 N.E.2d 778, 780 (1974) ("Thus, by reason of his employment, Bramblett's attorney was impliedly authorized to enter a binding stipulation of paternity. If the entry of such stipulation was contrary to directions, Bramblett must look elsewhere for redress."). An attorney's neg-

ligence in the handling of a legal matter renders the client liable for harm caused to third parties. *United Farm Bureau Mut. Ins. Co. v. Groen,* 486 N.E.2d 571, 572–574 (Ind.Ct.App.1985) (abuse of process and gross negligence) ("an attorney is generally considered the agent of his client.... The attorney has by virtue of the retainer or employment alone, the general implied authority to do on behalf of the client all acts in and out of court necessary or incidental to the prosecution or management of the suit or defense or the accomplishment of the purpose for which he was retained.").

retained, without the client's consent.[3] *Cory v. Howard*, 88 Ind.App. 503, 164 N.E. 639, 639–640 (1929) ("As the dismissal of a suit does not bar the bringing of another for the same cause of action, the attorney of record has the implied authority to discontinue the action if he sees fit.... As the attorney had the authority to make the agreement to dismiss the action, it follows that appellant was bound thereby the same as if he had made the agreement himself.").

■■■■ In light of this apparent authority granted by law,[4] a party seeking to resolve litigation was free to discuss settlement with the attorney as if discussion were with the client. *Black v. Krauss*, 119 Ind.App. 529, 85 N.E.2d 647, 651 (1949) ("Luhring's dealings with Bippus and Walker in the Walker office at the time of delivery of the deed, which dealings were at the instance and request of Mrs. Black's attorneys and in response to their letter to Luhring requesting settlement in the manner which was finally carried out, was clearly equivalent to such dealing directly with Mrs. Black....").

One recent appellate decision contained language that appears to signal a retreat from the historic breadth of an attorney's

agency. In *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978 (Ind.Ct.App.1993), the clients had authorized their attorney to attempt to settle a case. The attorney did so, but the clients disliked the settlement's terms and refused to sign the dismissal papers. The trial court reduced the settlement to judgment over the clients' objection, and the clients appealed. In affirming, the court of appeals wrote, "Although a client has full authority over the decision whether to settle the case or proceed to trial, Ind. Professional Conduct Rule 1.2, attorneys act as agents of their clients and may enter enforceable settlement agreements on their behalf if they first secure their client's consent to do so. *Mid–States Aircraft Engines v. Mize Co.* (1984), Ind. App., 467 N.E.2d 1242, 1248; *Miedreich v. Rank* (1907), Ind.App., 40 Ind.App. 393, 82 N.E. 117." Whether the clients consented to settlement negotiations was not an issue in the case, so the suggested limitation on the attorney's authority to settle a claim can only be considered *dicta*.

Accordingly, if this line of Indiana cases stopped here, the law would compel the granting of the plaintiffs' motion. The court would hold that while Henkels & McCoy did not clothe its insurer (Liberty Mutual) with

---

**3.** An attorney's tactical decisions in litigation also bind the client. *State v. Dubois Circuit Court*, 250 Ind. 38, 233 N.E.2d 177, 178 (1968) (failure to file timely motion bound client); *City of Evansville v. Nelson*, 245 Ind. 430, 199 N.E.2d 703, 709 (1964) (client bound by attorney's failure to challenge defects in municipal charges notwithstanding that client had not consented to waiver of such challenges); *Kerns v. Garrigus*, 130 Ind.App. 133, 162 N.E.2d 313, 315 (1959) ("If appellants were represented satisfactorily at the trial ... they cannot later be heard to complain of their representation because of one counsel's choice of legal defense unless there was some gross negligence or fraud and connivance. There is nothing in the record to show that appellants were under a binding obligation to accept the services of the casualty company's attorney in this matter. Having permitted him to appear for them, it was presumed that he had authority to represent them. Appellants have not charged the casualty company's attorney with fraud or connivance. Thus, they were bound by his actions.... To the charges presented, appellants' attorney elected to defend by filing an answer in abatement, on the ground that the Industrial Board had jurisdiction as, in his opinion, this was a question involving employer and employee. In so doing, appellants invited the very trouble which they claim now aggrieves

them."); *Hoffman v. Hoffman*, 115 Ind.App. 277, 57 N.E.2d 591 (1944) (attorneys could agree to change of venue of lawsuit without client's consent).

**4.** The attorney's apparent authority is not limitless. For example, in light of statutory language, an attorney cannot consent, in the client's place, to termination of the client's parental rights, *In re M.S.*, 551 N.E.2d 881 (Ind.Ct.App.1990), and notice to the attorney is not notice to the client when a statute requires notice to the client, *Solar Sources, Inc. v. Indiana Air Pollution Control Bd.*, 409 N.E.2d 1136, 1138 (Ind.Ct.App.1980), and while an attorney has the apparent authority to contract on the client's behalf with a court reporter, *Miller v. Palmer*, 25 Ind.App. 357, 58 N.E. 213, 214–215 (1900), the attorney has no apparent authority to retain another lawyer. *Anderson's Estate v. Smith*, 161 Ind.App. 480, 316 N.E.2d 592, 595–596, 83 A.L.R.3d 1153 (1974). An attorney cannot settle a claim that he was not retained to handle. *Jennings v. South Whitley Hoop Co.*, 50 Ind.App. 241, 98 N.E. 194 (1912) (client retained law firm to collect debt owed by customer; unbeknownst to either the client or the attorneys, the customer also was indebted on another account under another name).

apparent authority to settle its lien, it clothed its attorney with such authority by retaining him to represent it with respect to the lien. Mr. Ciesielski's attendance at the mediation entitled others in attendance to believe Henkels & McCoy was participating, and nothing in his yielding to Ms. Young during the conference was inconsistent with that appearance. The court would hold that just as Henkels & McCoy would have vested Ms. Young with apparent authority to settle the claim had it attended the mediation and allowed Ms. Young to speak for it, Mr. Ciesielski vested Ms. Young with apparent authority to speak for him, and so for Henkels & McCoy.

Henkels & McCoy argues that IND. CODE § 22–3–2–13 [5] prohibits any settlement of a workers' compensation lien without its written consent. The cases discussed above would lead the court to a different conclusion. Those cases indicate that a client whose attorney has entered into a settlement without the client's consent may be liable to the client for the unauthorized act. The court would not hold that Mr. Ciesielski or his firm are liable to Henkels & McCoy for this settlement; a fuller inquiry into the complicated relationship between Henkels & McCoy, Liberty Mutual, and the law firm that represented both entities would be needed before any determination of liability—of either insurer or attorney—could be made. It appears to the court, however, that it would be sufficient under the workers' compensation statute to provide in this court's order that while the settlement agreement would be enforced against Henkels & McCoy, it would be without prejudice to any claim Henkels & McCoy might have against Liberty Mutual or its attorney. The statute requires indemnification or protection, and such an order would seem to afford Henkels & McCoy the protection to which it is entitled under Indiana law.

Henkels & McCoy also argues that the mediation produced no enforceable agreement because the mediator's letter to the participants stated that, "No agreement will be binding on any party as to any subject, unless in writing, and signed by those to be bound by the agreement." Under Indiana law, however, "If a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement from the court in which the action is pending." *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978, 982 (Ind.Ct.App.1993). No party to the mediation signed the clause on which Henkels & McCoy now relies except the mediator, and the mediator reported to the bankruptcy court that a settlement had been reached despite the absence of any written memorandum. The bankruptcy court approved the settlement with no apparent objection. The record is clear that none of the mediation participants, including the mediator, viewed the limitation in the mediator's letter as having bound any of the mediation participants.

At the very least, Liberty Mutual waived any protection offered by the limitation in the mediator's letter. Waiver is the voluntary relinquishment of a known right. *Lake County v. State ex rel. Manich*, 631 N.E.2d 529, 533 (Ind.Ct.App.1994). Waiver may be implied from a contracting party's action or failure to act, *Stepp v. Review Bd. of Indiana Empl. Sec. Div.*, 521 N.E.2d 350, 354 (Ind.Ct.App.1988), and silence and acquiescence when there is a duty to speak may constitute waiver. Liberty Mutual had a duty to speak when the mediator informed the bankruptcy court of the settlement, but remained silent. If there was a contract containing this limitation, Liberty Mutual waived its protection.[6]

---

5. "No release or settlement of claim for damages by reason of injury or death, and no satisfaction of judgment in the proceedings, shall be valid without the written consent of both employer or the employer's compensation insurance carrier and employee or his dependents, except in the case of the employer or the employer's compensation insurance carrier, consent shall not be required where the employer or the employer's compensation insurance carrier has been fully indemnified or protected by court order."

6. Henkels & McCoy and Liberty Mutual ask the court, if any question is to be certified to the Indiana Supreme Court, to certify the following question as well: "Are the terms and conditions of a mediation session established and communicated by the mediator to the participants binding on the participants who take part in mediation?"

The court does not intend to depreciate the importance of the proposed question, or to presume that this court can provide a better answer under Indiana law than could the supreme court; this court certainly would appreciate the su-

Accordingly, under the cases discussed above concerning the attorney's apparent authority to bind the client in settlement, the court would grant the Kovals' motion to enforce the settlement. One additional case remains for discussion, however.

In September 1996, the Indiana Court of Appeals decided a case at odds with the cases discussed above. In *Gravens v. Auto-Owners Ins. Co.*, 666 N.E.2d 964 (Ind.Ct. App.1996), Gravens retained an attorney to sue his insurer. Gravens did not authorize his attorney to settle the claim, but the attorney did so anyway, before filing suit. Gravens hired another attorney, who filed suit, and the insurer defended on the basis of accord and satisfaction. The trial court granted summary judgment to the insurer, but the court of appeals reversed. The appellate court's brief opinion explained, first its belief that it was writing on a clean slate, and then its reasoning:

Indiana law is well-settled that an attorney has, by virtue of his employment, the general implied authority to do on behalf of the client all acts in or out of court necessary or incidental to the prosecution or management of the suit or the accomplishment of the purpose for which he was retained. *United Farm Bureau Insurance Company v. Groen*, 486 N.E.2d 571, 573 (Ind.Ct.App.1985). However, neither party has cited, nor are we aware of any Indiana authority which disposes of the precise question presented in this case, that is, whether an attorney has the implied authority to settle a case without the authorization or consent of the client.

\* \* \*

Nevertheless, we hold that the requirement that an attorney must obtain his client's authority or consent to settle a case is implicit in the client's right to exercise ultimate authority over the settlement of a case as guaranteed by Prof. Cond. R. 1.2(a). Moreover, the rule that an attorney does not have authority to compromise

an action merely by virtue of the attorney-client relationship is essentially universal. Eichelberger, Eunice A., *Annotation: Authority of Attorney to Compromise Action—Modern Cases*, 90 A.L.R.4th 326, 333.

In this case, as in most insurance settlements, both parties understood that there would be no settlement without a release signed by the client, not by his attorney. This understanding was implicit when the draft and the release were tendered together. The insurance company had no enforceable expectation that the claim had, in fact, been settled until Gravens himself had signed the release, which he declined to do.

Gravens did not authorize his original attorney to settle the case and immediately repudiated the settlement agreement purported to have been reached by that attorney. Under these circumstances, Gravens was not bound by his attorney's agreement and the trial court's entry of summary judgment on this basis was erroneous.

666 N.E.2d at 985–966.

The *Gravens* opinion, which appears to be diametrically inconsistent with the cases cited in this memorandum, but which also expressed unawareness of those cases and so cannot be said to have rejected those cases, leaves the law of Indiana unclear. Under the *Erie* doctrine, a federal court sitting in diversity must predict how the case would be decided by the highest court in the state whose law provides the rule of decision. *Mason v. Ashland Exploration, Inc.*, 965 F.2d 1421, 1424 (7th Cir.1992). Because the Indiana Court of Appeals is not the highest court of Indiana, this court is not required to follow its decisions if this court believes that the Indiana Supreme Court would decide the issue differently. *Robinson v. Ada S. McKinley Community Services*, 19 F.3d 359, 363 (7th Cir.1994) ("Where an intermediate appellate court rests its considered judgment upon the rule of law which it

---

preme court's guidance on the issue. In this case, however, the question does not appear to be susceptible of a straightforward answer in light of the factual issues that surround it. The certification process should be invoked with due respect for the role of the state supreme court,

which is not to advise this court how to decide its cases; the supreme court has its own work to do. Certification should be limited to questions that are clearly defined and outcome-determinative, and this issue is not sufficiently clearly defined under the unique facts of this case.

announces, that is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."), *quoting Hicks v. Feiock*, 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 1428 n. 3, 99 L.Ed.2d 721 (1988), *and West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 237–238, 61 S.Ct. 179, 183–184, 85 L.Ed. 139 (1940); *Smith v. Navistar International Transp. Corp.*, 957 F.2d 1439, 1443 (7th Cir.1992) ("federal courts are not bound by the decision of a lower state court unless the state's highest court in the jurisdiction whose law governs the diversity action has ruled on the matter."). Because it has been nearly 60 years since the Indiana Supreme Court held that an attorney's unauthorized settlement of a claim is binding with respect to third parties, however, the court cannot predict confidently that the Indiana Supreme Court would ratify its prior decisions.

Only the Indiana Supreme Court can answer the question authoritatively, and that court has a vehicle for responding to controlling questions of state law certified by federal district courts sitting in Indiana. Ind. R.App.P. 15(*O* ). This court does not lightly certify questions to an already busy court, but believes certification is appropriate in this case. In *Valerio v. Home Ins. Co.*, 80 F.3d 226, 229 (7th Cir.1996), and *Shirley v. Russell*, 69 F.3d 839, 844 (7th Cir.1995), the court noted several factors to be considered in deciding whether to certify a question to a state's highest court, and those factors favor certification in this case. First, the issue is determinative of the issue before this court (if the question is resolved in Henkels & McCoy's favor, the case still night proceed to trial, but remand was a possible outcome in *Valerio* ). Second, the issue's outcome would affect far more than this case: hundreds of Indiana lawyers settle cases every month; although the number who do so without client authorization is a matter of speculation, hundreds of persons dealing with Indiana lawyers should know whether they must independently confirm the lawyer's authority to settle. *Cf. Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 892 (7th Cir.1996) (delay for certification "inappropriate in cases where the outcome of the analysis would produce a fact bound, particularized decision lacking broad precedential significance").

The court is mindful of creating more delay in a case pending since 1992. Given the likely continued delay if the settlement is not enforced—the effect on the Baker defendants' bankruptcy is uncertain—the court believes the appropriate route is to certify the question to the Indiana Supreme Court for authoritative resolution.

The court afforded the parties an opportunity to object to certification. Henkels & McCoy and Liberty Mutual requested that the court certify two additional questions. The court already noted one such suggestion and rejected it because it is so fact-bound. *See* note 6, *supra.* The other question, however, seems to satisfy the criteria for certification with some modification. Henkels & McCoy and Liberty Mutual ask that the supreme court be asked, "Is an oral settlement of a worker's compensation lien enforceable even though I.C. 22–3–2–13 requires it to be in writing before it is valid?" The court believes that question to be incomplete, but the more complete question set forth below still would have broad-based impact.

Accordingly, the court now certifies the following questions of Indiana law to the Indiana Supreme Court:

1. If an attorney settles a claim as to which the attorney has been retained, but does so without the client's consent, is the settlement binding between third parties and the client?

2. Under the portion of Ind.Code § 22–3–2–13 that provides, "consent shall not be required where the employer or the employer's compensation insurance carrier has been fully indemnified or protected by court order," does it constitute "protect[ion] by court order" such that consent is not required for the settlement of claims and satisfaction of judgment in proceedings, for the court to specifically preserve a compensation insurance carrier/lienholder's right to bring suit against its agent for settling its claim while enforcing an oral settlement of claims by reason of injury or death?

The clerk of this court will transmit to the Indiana Supreme Court, the docket sheet and the briefs and agreed facts filed with respect to the motion to enforce in this case, together with this memorandum. Upon request of the Indiana Supreme Court, the clerk will transmit all or any part of the record as that court desires.

The court DENIES AS MOOT the plaintiffs' motion for pretrial conference (# 237).

SO ORDERED.